*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |
|---|---|
| JOSHUA C. RICHARDSON, | ) ) ) | Supreme Court Nos. S-15211/15221 (Consolidated) |

JOSHUA C. RICHARDSON,                    )    Supreme Court Nos. S-15211/15221
                                          )    (Consolidated)
            Appellant,                    )
                                          )    Superior Court No.  3AN-12-08693 CI
      v.                                  )
                                          )    O P I N I O N
                                          )
                                          )    No. 7061 – October 30, 2015
MUNICIPALITY OF ANCHORAGE,                )
STATE OF ALASKA, ANCHORAGE                )
POLICE DEPARTMENT, OFFICER                )
JUSTIN BLAKE, DIMOND CENTER               )
BEST BUY, DAVID LIGATICH,                 )
BEST BUY CORPORATION,                     )
                                          )
            Appellees.                    )
                                          )
                                          )
JOSHUA C. RICHARDSON,                     )
                                          )
            Appellant,                    )    Superior Court No.  3AN-12-08963 CI
      v.                                  )
                                          )
                                          )
                                          )
STATE OF ALASKA, MUNICIPALITY             )
OF ANCHORAGE, ANCHORAGE                   )
POLICE DEPARTMENT, OFFICERS               )
LUIS F. SOTO, EARL L. ERNEST,             )
DARRELL EVANS, CHRISTOPHER                )
SIMMONS, GLEN DAILY, TIMOTHY              )
E. LANDEIS, RYAN McNAMARA,                )

DENIELLE HROVAT, JASON M. )
WHETSELL, BRANDON C. OTTS, )
RAFAEL ROBINSON, SHAUN P. )
HENRY, CLINTON S. PECK, JASON )
A. SCHMIT, STEPHEN M. ONDRA, )
and K-9 JIMMY LEE, )
)
            Appellees. )
_____ )

Appeal in File No. S-15211 from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge. Appeal in File No. S-15221 from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Joshua C. Richardson, pro se, Anchorage, Appellant. Joyce Weaver Johnson, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellees Municipality of Anchorage, Anchorage Police Department, and Officers Justin Blake, Luis F. Soto, Earl L. Ernest, Darrell Evans, Christopher Simmons, Glen Daily, Timothy E. Landeis, Ryan McNamara, Denielle Hrovat, Jason M. Whetsell, Brandon C. Otts, Rafael Robinson, Shaun P. Henry, Clinton S. Peck, Jason A. Schmit, Stephen M. Ondra, and K-9 Jimmy Lee. Mark Cucci, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee State of Alaska. Marc G. Wilhelm, Richmond & Quinn, Anchorage, for Appellees Dimond Center Best Buy, David Ligatich, and Best Buy Corporation.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.     INTRODUCTION

The Anchorage Police Department identified Joshua Richardson as a suspect in a shoplifting incident at Best Buy. When the police went to Richardson's home to make an arrest, Richardson hid in the crawlspace and allegedly incurred injuries from a police canine. The misdemeanor theft charges against Richardson were dismissed shortly after his arrest. About two years after these events, Richardson filed two civil suits against the Anchorage Police Department, various police officers, the State of Alaska, Best Buy, and the Best Buy employee who reported the theft. In separate proceedings, one before Judge Catherine M. Easter and one before Judge Mark Rindner, the superior court dismissed both complaints as untimely under the two-year statute of limitations. Richardson appeals these dismissals and we address them both here.

Richardson argues that the statute of limitations should have been tolled due to his alleged mental incompetency and separation from his legal documents during unrelated incarceration, but we conclude there is no genuine dispute of material fact as to these issues. Nor was the superior court required to appoint Richardson an attorney or more liberally construe his pro se pleadings. We therefore affirm the dismissal of Richardson's suit before Judge Easter.

In the suit before Judge Rindner, however, there was credible evidence that Richardson filed his complaint — albeit with technical deficiencies — before the statute of limitations ran. This created a genuine issue of material fact. We therefore vacate the dismissal in that case and remand for further proceedings to determine when Richardson commenced his suit.

## II. FACTS AND PROCEEDINGS

### A. Richardson's Complaints

#### 1. The suit before Judge Easter[1]

Richardson filed a complaint alleging that on July 7, 2010, the Anchorage Police Department responded to the theft of a laptop computer reported by a Best Buy employee. According to Richardson, this employee "conspired" with an Anchorage police officer to "present a fraudulent line up on or about July 8," at which Richardson was identified as a perpetrator. Richardson alleged that on July 8, this officer perjured himself by filing a false complaint against Richardson accusing him of third-degree theft. This theft charge against Richardson was ultimately dismissed. Richardson further claimed that this false complaint caused the Anchorage police to "de[s]cend upon [Richardson's] property and . . . [make] an unreasonable search and seizure[]."

Along with the Best Buy employee and the police officer who responded to the alleged theft, Richardson named the State of Alaska, the Anchorage Police Department, the Municipality of Anchorage, the "Dimond Center Best Buy," and the "Best Buy Corp[o]ration" as defendants.[2] Seeking millions of dollars in damages, he alleged numerous causes of action including obstruction of justice, extortion, trespass, unlawful arrest, and false imprisonment.

---

[1]    We refer to the suit before Judge Easter as "the first suit" and the suit before Judge Rindner as "the second suit," because that is the order in which the court accepted them for filing. However, as we discuss in Part IV.A.2, the *effective* filing date of the second suit is at issue in this appeal.

[2]    When discussing the first suit, we will use "the Municipality" to refer collectively to the Municipality of Anchorage and the Anchorage Police Department. And we refer to Best Buy Stores LP and the Best Buy employee collectively as "Best Buy."

## 2. The suit before Judge Rindner

Richardson filed a separate complaint based on events beginning late in the evening of July 13, 2010, when the Anchorage police allegedly arrived at Richardson's home. According to Richardson, the police initially arrived without a warrant and entered his residence without permission. Richardson claimed that the police obtained a warrant early the next morning and sent a police canine into the crawl space of the residence, where Richardson was hiding. By Richardson's account, he got into a "fist fight" with the canine, sustained dog bite injuries to his arms and legs, and was transported to the hospital for treatment. After being released from the hospital, Richardson was booked at the Anchorage Correctional Complex, but the charges against him were ultimately dismissed.

Richardson alleged the same causes of action as in his first complaint and similarly sought millions of dollars in damages. Richardson named the State of Alaska, the Municipality of Anchorage, the Anchorage Police Department, fifteen police officers who purportedly participated in his arrest, and "K-9 Jimmy Lee" as defendants.[3]

## B. Proceedings

Richardson was unrepresented throughout the proceedings in both cases, and he remains so on appeal.

### 1. The suit before Judge Easter

Shortly after filing his first complaint, Richardson filed a request for appointed counsel. The superior court denied this request.

---

[3] When discussing the second suit, we will use "the Municipality" to refer collectively to the Municipality of Anchorage, the Anchorage Police Department, the fifteen named police officers, and K-9 Officer Jimmy Lee.

The Municipality and Best Buy moved to dismiss Richardson's complaint as untimely under the two-year statute of limitations,[4] arguing that the alleged wrongs occurred on July 7, 2010, but that Richardson filed his complaint — at the earliest — on July 17, 2012.[5] Richardson then filed several motions arguing that his complaint was timely under the statute of limitations: an opposition to Best Buy's motion to dismiss, a "Motion for Tolling the Statute of Limitations and Receiving Equitable Tolling," and motions requesting a judgment of default under Alaska Civil Rule 55 against Best Buy and the Municipality. He also filed a motion requesting an evidentiary hearing that was technically styled as a response to defendants' motions to dismiss.

In these motions and attached memoranda Richardson raised numerous arguments, only three of which are relevant to this appeal. First, Richardson claimed that his cause of action did not accrue until September 23, 2010, when his theft charge was dismissed. Second, Richardson appeared to argue that he was mentally incompetent to file suit due to his "mental disorder and eighth grade education." Finally, Richardson claimed that "the restrictions of imprisonment" and his pro se status prevented earlier filing of his complaint.

---

[4]     *See* AS 09.10.070(a) ("Except as otherwise provided by law, a person may not bring an action . . . for personal injury or death . . . unless the action is commenced within two years of the accrual of the cause of action.").

[5]     Richardson claims that he delivered his complaint on July 17, 2012, to the "legal mail box" at the facility where he was incarcerated, but it was not accepted by the court for filing until July 23. On appeal Richardson asks this court to apply the "mailbox rule," under which filing would have been effective upon delivery to the prison's legal mailbox. *See* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1052 (3d ed. 2015) ("[I]ndividuals who are incarcerated and are filing their legal documents pro se may benefit from a special 'mailbox rule' . . . ."). Because we ultimately agree with the superior court that the statute of limitations expired on July 14, we do not need to decide whether the "mailbox rule" should apply.

The superior court granted the Municipality's and Best Buy's motions to dismiss, finding that Richardson's cause of action accrued on July 14, 2010, "at the latest" and that Richardson filed his complaint on July 23, 2012.[6] The court did not expressly address Richardson's arguments regarding his mental competency to file suit and difficulties due to incarceration, but it did deny the motions through which Richardson had raised these issues. The court did not specifically rule on Richardson's request for an evidentiary hearing.

Richardson filed a motion for reconsideration, which the court denied. He then filed several other motions, including one that more specifically articulated his mental incompetency argument. The court did not rule on this motion, and it entered final judgment in the defendants' favor in June 2013.

### 2. The suit before Judge Rindner

The court accepted Richardson's second complaint for filing on July 30, 2012. Shortly thereafter Richardson filed a request for appointed counsel, which the superior court denied, explaining that "[t]here is no constitutional right to counsel" in "a civil case seeking damages."

The Municipality filed a motion to dismiss based on the two-year statute of limitations, arguing that the alleged wrongs occurred on July 13, 2010, but that the complaint was not filed until July 30, 2012. Richardson filed an opposition arguing that his cause of action did not accrue until the theft charge against him was dismissed on September 23, 2010. The superior court granted the Municipality's motion to dismiss, finding that Richardson's claims involved acts occurring on July 13 and 14, 2010, but that the complaint was not filed until July 30, 2012.

---

[6] The State of Alaska also filed motions to dismiss in both of Richardson's cases, which the court granted. We reserve further discussion of these proceedings for Part IV.E.

After this dismissal Richardson filed two motions for reconsideration, arguing that he "met the [r]equirements to prove extenuating circumstance[s]" and invoking the discovery rule.[7] He also filed a motion identical to one filed in the first case, impliedly arguing that he was mentally incompetent to file suit and citing his incarceration-related difficulties. Finally, he filed a motion requesting an evidentiary hearing that was again technically styled as a response to defendants' motions to dismiss.

The superior court issued an order responding to these motions. The court recognized that Richardson was pro se and noted its acceptance of his untimely motion for reconsideration, but explained it could not "cut him some slack" as to the statute of limitations. The court noted that Richardson's claims involved acts occurring on July 13 and 14, 2010, and that Richardson filed his complaint on July 30, 2012. After explaining the relevant case law, the court rejected Richardson's invocation of the discovery rule. Richardson then filed several additional motions, including two that more expressly articulated his claim of mental incompetence. In one of its written orders, the superior court rejected Richardson's mental incompetence claim as "not adequately supported," noting that the emergency room records Richardson submitted showed he was fully "alert and oriented."

Richardson also filed a motion presenting a new statute of limitations argument, for the first time explaining that he attempted to file his complaint *prior* to the expiration of the statutory period on July 14, 2012. The issue of when Richardson

---

[7]     *See John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002) ("[T]he statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action." (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988))).

commenced his suit touched off several months of further proceedings, successive requests for reconsideration, and seven more court orders.

In July 2013 Richardson filed his final motion for reconsideration, which the court denied, concluding that "[b]ased on the current record before the court there is no basis for further review."

## III. STANDARD OF REVIEW

"This court exercises its independent judgment when interpreting and applying statutes of limitation."[8]

"The decision to appoint counsel for a civil litigant is a procedural decision, which we review for abuse of discretion. . . . 'Reversal is warranted only if we are left with a definite and firm conviction . . . that a mistake has been made.' "[9]

"In reviewing a motion to dismiss, we generally do not consider matters outside the complaint . . . . When parties present additional materials outside of the pleadings in connection with a motion to dismiss, the superior court must expressly exclude the materials or convert the motion into a motion for summary judgment under Alaska Civil Rule 56 . . . ."[10] We explained in *Larson v. State, Department of Corrections* that

> [w]hen the superior court does neither, but instead decides the motion under [Alaska Civil] Rule 12(b)(6) without stating whether it considered materials outside the pleadings, we have three options: we may elect to reverse and remand for proper consideration; we may review the superior court's decision as if the motion for dismissal had been granted after

---

[8]     *Brotherton v. Brotherton*, 142 P.3d 1187, 1189 (Alaska 2006).

[9]     *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1109-10 (Alaska 2002) (quoting *Silvers v. Silvers*, 999 P.2d 786, 789 (Alaska 2000)).

[10]     *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 7 (Alaska 2012).

exclusion of outside materials; or we may review the decision as if summary judgment had been granted after conversion of the motion to dismiss into one for summary judgment.[11]

In both proceedings Richardson submitted a number of motions — along with accompanying evidence — that could be considered supplemental responses to the defendants' motions to dismiss. In granting the Municipality's and Best Buy's motions to dismiss in the first case, Judge Easter listed these various motions and noted which she was denying. We therefore assume the court considered these materials, and accordingly review the decision under the summary judgment standard. In the case before Judge Rindner, the court expressly excluded materials outside the pleadings in granting the defendants' motions to dismiss. But the court issued six subsequent orders responding to Richardson's requests for reconsideration, three of which referenced evidence outside of the pleadings. Therefore, we also review the decision in the second case as if the Municipality's motion to dismiss under Rule 12(b)(6) had been converted to a motion for summary judgment.

This court "review[s] a grant of summary judgment de novo, 'affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.' "[12] The court "must determine 'whether any genuine issue of material fact exists,' and in so doing all factual inferences must be drawn in favor of — and the facts must be viewed in the light most favorable to — the party against whom

---

[11]    *Id*.

[12]    *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012) (quoting *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008)).

summary judgment was granted."[13]  "These same ground rules apply in summary judgment cases involving statute-of-limitations defenses."[14]

## IV.    DISCUSSION

### A.    Statute Of Limitations Issues

#### 1.    The superior court did not err by concluding that Richardson's cause of action accrued on July 14, 2010.

"A cause of action accrues when a party knows or should know that he has a claim.  Ordinarily, this is the date on which the injury occurs."[15]  Under the discovery rule, "the statute of limitations does not begin to run until the claimant discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action."[16]

In both of Richardson's suits, the superior court concluded that Richardson's cause of action accrued no later than July 14, 2010, when Richardson was allegedly arrested at his home and injured by the police canine.  Although Richardson argued below that his cause of action did not accrue until the theft charges against him were dismissed on September 23, he abandons this argument on appeal, stating in his opening briefs that "the incident that started [his] injuries . . . happened on July 14, 2010 — what amounts to a false arrest."

Richardson does, however, appear to invoke the discovery rule on appeal for the proposition that his cause of action accrued after July 14.  Citing *Catholic Bishop*

---

[13]    *Id*. (quoting *Nielson v. Benton*, 903 P.2d 1049, 1051-52 (Alaska 1995)).

[14]    *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005).

[15]    *Yurioff v. Am. Honda Motor Co.*, 803 P.2d 386, 388 (Alaska 1990) (citation omitted).

[16]    *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002) (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988)).

*of Northern Alaska v. Does 1-6*, he states that "under rules of discovery, the date the statute of limitations begins to run is a question of fact."[17]  He also states that his "mental disorder" was "part of the injury *he did not know about until being seen by a doctor on the outside July 20th, 2010*," and "also should  toll the statute."  (Emphasis added.)  But Richardson does not articulate how his alleged mental disorder is an "essential element" of any claim.  Nor does Richardson explain which element or elements of his claims remained undiscovered after his July 14 arrest.  Any implied argument regarding the discovery rule is therefore unavailing.

> **2.  In the case before Judge Rindner, there was a genuine issue of material fact as to when Richardson commenced his suit.**

Under Alaska Civil Rule 3(a), "[a] civil action is commenced by filing a complaint with the court."  Here, Richardson's complaint was not accepted for filing by the superior court until July 30, 2012 — more than two years after his cause of action accrued on July 14, 2010.  But Richardson argues that his complaint was nonetheless timely because it was first *received* by the court — admittedly with technical deficiencies[18] — by July 12, 2012, before the statute of limitations ran.  In light of the evidence supporting Richardson's assertions, we conclude there is a genuine issue of material fact as to when Richardson commenced his suit.

Renewing an argument he made before the superior court, Richardson claims that he mistakenly filed his complaint in district court rather than superior court and that his complaint was returned to him with a deficiency notice dated July 12, 2012.  Richardson attached this deficiency notice to one of his several motions for

---

[17]  *See* 141 P.3d 719, 725 (Alaska 2006).

[18]  *See Mullin v. State*, 996 P.2d 737, 738 (Alaska App. 2000) ("[A] pleading may satisfy a filing deadline even though the pleading is technically deficient.").

reconsideration.[19]  The deficiency notice listed the case name, "Richardson vs. State of Alaska et al.," and described three problems with Richardson's complaint:  1) the lack of district court jurisdiction over the case due to claimed damages exceeding $100,000; 2) the omission of a "case description"; and 3) the absence of a form requesting a filing fee exemption.  The notice indicated that Richardson's documents were being returned to him.

The superior court concluded that "[t]his *might* be proof that Mr. Richardson's effort to litigate the case should be considered timely."  (Emphasis in original.)  But the court found it "[could not] decide this on the record before it," particularly given that Richardson had filed another case involving similar allegations. The court therefore asked Richardson to provide a copy of the complaint he had tried to file in district court, in order to show that the July 12, 2012 deficiency notice was indeed issued in the suit pending before Judge Rindner.  Richardson never produced a copy of his complaint, and explained that he no longer had his original complaint because he fixed the deficiency by altering the first page of the complaint and mailing it back to the clerk.  But Richardson attested in an affidavit that the complaint he initially filed in district court was the one pending before Judge Rindner.

The superior court also considered a "legal mail report" from the Wildwood Correction Center, where Richardson was incarcerated.  According to this report, Richardson mailed items addressed to the "AK Court System, Clerk of Court — Anch" on July 3 and July 19 and received mail from "AK Court System, Anchorage Trial

---

[19]    We note that Richardson submitted this evidence only after the superior court denied his motion for reconsideration.  But the superior court expressly considered Richardson's subsequent requests for reconsideration, along with evidence and arguments from both parties.  We therefore evaluate the evidence as if the superior court were ruling on a timely motion for reconsideration under Alaska Civil Rule 77(k).

Court" on July 13. These dates are consistent with Richardson's account of events: he claims that he signed his original complaint and placed it in prison mail on July 2, received his complaint back on July 13 with a deficiency notice dated July 12, and mailed the corrected complaint on July 19. But the superior court concluded that the legal mail report did "not establish the contents of the mail or whether the mail was generated in a particular case." The court noted that the legal mail report did not satisfy its prior request for evidence showing that Richardson's complaint in *that case* was received within the statute of limitations.

Because we are treating the Municipality's motion to dismiss as if it had been converted to a motion for summary judgment,[20] "all factual inferences must be drawn in favor of — and the facts must be viewed in the light most favorable to — the party against whom summary judgment was granted."[21] Even if the evidence described above was insufficient to *foreclose* other possibilities, it strongly supports Richardson's version of events. And the Municipality presented no evidence to suggest that the July 12, 2012 deficiency notice was issued in any case *other* than the one pending before Judge Rindner. Accordingly, we conclude that the evidence before the superior court raised a genuine issue of fact as to whether the court system effectively received Richardson's complaint prior to July 14, 2012. We therefore vacate the superior court's order granting the Municipality's motion to dismiss and remand for further proceedings on this issue.

---

[20]     *See Larson v. State, Dep't of Corr.*, 284 P.3d 1, 7 (Alaska 2012) ("When parties present additional materials outside of the pleadings in connection with a motion to dismiss, the superior court must expressly exclude the materials or convert the motion into a motion for summary judgment . . . .").

[21]     *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012).

**3. The statute of limitations was not tolled due to mental incompetency.**

Richardson argues that the statute of limitations should have been tolled due to a mental disability that prevented him from filing his complaint earlier. Under AS 09.10.140(a),

> if a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues . . . incompetent by reason of mental illness or mental disability, the time of [the] disability identified . . . is not a part of the time limit for the commencement of the action.

The "general test" for mental incompetency is "whether a person could know or understand his legal rights sufficiently well to manage his personal affairs."[22]

We have emphasized that this test does not measure whether a litigant *did* understand his or her legal rights, but whether he or she is *capable* of understanding them.[23] In *Cikan v. ARCO Alaska, Inc.*, for instance, we reversed a grant of summary judgment against a slip-and-fall plaintiff who filed suit eight years after incurring head injuries, where a psychiatrist had attested that the plaintiff failed to understand her "post-concussion syndrome" until years after the accident.[24] But in *Hernandez-Robaina v. State*, we held that an inability to understand English was insufficient to show incompetence for purposes of tolling the statute of limitations.[25]

---

[22] *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 340 (Alaska 2005) (quoting *Adkins v. Nabors Alaska Drilling, Inc.*, 609 P.2d 15, 23 (Alaska 1980)).

[23] *Hernandez-Robaina v. State*, 849 P.2d 783, 785 (Alaska 1993) (citing *Adkins*, 609 P.2d at 23).

[24] *Cikan*, 125 P.3d at 337-38.

[25] *Hernandez-Robaina*, 849 P.2d at 785.

We find *Hernandez-Robaina* to be the closer analogy to Richardson's allegations of mental incompetence. In both of his suits, Richardson filed a "Motion for Tolling the Statute of Limitations and [for] Receiving Equitable Tolling" raising a number of arguments related to the statute of limitations. In an attached affidavit, he made the following statements: 1) that "being held falsely in prison for charges he did not commit . . . caused him mental anguish"; 2) that his cell mate committed suicide three days after Richardson's arrest; 3) that Richardson was being treated by "[Department of Corrections] mental health to this day, for PTSD, and depression that he lives with everyday"; 4) that he has an "eighth grade education"; and 5) that he "is mentally hand[i]capped, from head trauma." In addition, Richardson referenced his "mental handicaps" in a subsequent request for an evidentiary hearing on the statute of limitations.

When Judge Easter granted the defendants' motions to dismiss in the first suit and denied Richardson's subsequent motion for reconsideration, there was no other evidence in the record regarding Richardson's mental incompetency. Because Best Buy's and the Municipality's motions had been effectively converted to motions for summary judgment, Richardson was required "to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists."[26] And although "[c]ourts have interpreted liberally the type of mental condition that will toll a statute of

---

[26] *See Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 517 (Alaska 2014) (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n.32 (Alaska 1978)).

limitations,"[27] Richardson's descriptions of his mental disabilities were insufficient to show that he could produce evidence of an inability to understand his legal rights.[28]

In the suit before Judge Rindner, the superior court considered additional evidence not taken under advisement in Richardson's first suit. In particular, Richardson filed a motion expressly arguing that AS 09.10.140(a)(2) should be invoked because his "mental disability caused [him] confusion, personal[i]ty changes, [and] disorganization that [led him to file] bankruptcy and caused [him] not to communicate effectively with [his] attorney at trial." And in an attached affidavit, Richardson stated: "[My arrest] caused me to be traumatized to the point of me not being in my proper state of mind for many months to come. It took me until October [2010] before I was even made aware that I could file a [l]awsuit [against the] Anchorage Police Department . . . ." Perhaps most notably, Richardson submitted medical records from July 21, 2010, just a week following his arrest.

The evidence that Richardson himself submitted illustrated an ability to understand his legal rights. In particular, one medical record notes, "[Patient] states falsely accused & attacked by police dogs." Another doctor's notation reads:

> [Richardson] spent the entire time explaining what had happened and how he was innocent. Apparently there was a case of suspected involvement in a theft. I will not go into the details of everything that he explained to me . . . [,]but he states that he is innocent but nonetheless the police had the

---

[27] *Cikan*, 125 P.3d at 340 (alteration in original) (quoting *Adkins*, 609 P.2d at 23).

[28] As for the evidence Richardson submitted *after* the superior court denied his motion for reconsideration, the court was under no obligation to consider what were, in essence, a series of untimely and successive requests for reconsideration. *See* Alaska R. Civ. P. 77(k) (requiring that a motion to reconsider be made within ten days of notice of a ruling).

dogs all over him . . . . He is paranoid because of how he was treated, knowing that he was innocent, and because things were removed from his home by the police and he does not know why. He states that even his surveillance cameras, which would have recorded everything[,] were removed.

Richardson's apparent ability to relay what had happened to him and communicate the alleged wrongfulness of the police's conduct undermines his mental incompetency claim. It also distinguishes this case from *Cikan*, where there was credible evidence that "the picture of the [plaintiff's] symptoms . . . did not become evident to either [the plaintiff] or her physicians until a number of years after the accident."[29] In contrast, Richardson's medical records indicate that he appreciated the nature of his injuries in the immediate aftermath of his arrest. We therefore conclude that neither superior court judge erred in rejecting Richardson's mental incompetency claim.

**4.   The statute of limitations was not equitably tolled based on Richardson's separation from his legal documents or other hardships of incarceration.**

In each of his appeals, Richardson argues that the statute of limitations should have been equitably tolled due "extraordinary circumstances" based on separation from his legal documents during a six-day "lockdown" at the Anchorage Correctional Complex following his cell mate's suicide, and during a nine-day period surrounding his transfer to Wildwood Correctional Center. Even assuming all of Richardson's alleged facts to be true, however, equitable tolling would not — as a matter of law — bar the statute of limitations defense.

As we explained in *Fred Meyer of Alaska, Inc. v. Bailey*, "[t]he doctrine of equitable tolling 'relieve[s] a plaintiff from the bar of the statute of limitations when he

_____

[29]   125 P.3d at 338.

has more than one legal remedy available to him' . . . ."[30] "[A]fter the plaintiff 'adopts a single course of action which is dismissed or otherwise fails, courts generally allow the plaintiff to pursue a second remedy based on the same right or claim.' "[31] Therefore we have explained that "[t]he statute of limitations is . . . tolled during the pendency of the initial defective action, giving the plaintiff the full statutory period to file once tolling ceases."[32] Accordingly, equitable tolling requires a key element missing in Richardson's case: "that the party have pursued a past claim in a 'judicial or quasi-judicial governmental forum.' "[33]

In the proceedings below, Richardson argued that the statute of limitations should be tolled because he had "exhausted administrative remedies" by sending a complaint to Anchorage Police Department Risk Management and cooperating with the Municipality's investigation. But on appeal, he neither recounts these efforts nor argues that his pursuit of an alternative remedy served to toll the statute of limitations.[34] Richardson likewise fails to reference his "administrative remedies" argument in his extensive recitation of the pleadings he submitted below. We therefore conclude that on appeal, Richardson has abandoned any argument that the statute of limitations should

---

[30] 100 P.3d 881, 886 (Alaska 2004) (second alteration in original) (quoting *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989)).

[31] *Id*. (quoting *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 768 (Alaska 1987)).

[32] *Id*. (citing *Gudenau*, 736 P.2d at 768).

[33] *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 408 (Alaska 2014) (quoting *Gudenau*, 736 P.2d at 768).

[34] Richardson does mention his communications to the Municipality of Anchorage and the State of Alaska, but only in stating that he had to recruit another inmate to assist with these communications due to his own mental disability.

have been tolled based on pursuit of his claim in a "judicial or quasi-judicial governmental forum."[35]

Richardson also seems to be arguing for equitable tolling based on "extraordinary circumstances." Some jurisdictions apply this doctrine to equitably toll a plaintiff's claims "where extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert his or her claim"[36] but "[w]e have neither accepted nor rejected this theory of tolling."[37] Likewise this case does not require us to decide whether we will toll claims based on extraordinary circumstances because Richardson's claims would not meet the high standard required to toll claims under this doctrine.[38]

Instead, Richardson's equitable tolling arguments on appeal are based solely on his alleged separation from his legal documents as a result of his incarceration, in addition to his claim of mental incompetence. In federal habeas cases, a prisoner's separation from legal documents will sometimes serve as an "extraordinary circumstance" warranting equitable tolling.[39] But this court has never adopted such a

---

[35] *See Christianson*, 318 P.3d at 408 (quoting *Gudenau*, 736 P.2d at 768).

[36] *Kaiser v. Umialik Ins.*, 108 P.3d 876, 882 (Alaska 2005) (quoting *Abbott v. State*, 979 P.2d 994, 998 (Alaska 1999)) (internal quotation marks omitted).

[37] *Id*.

[38] *See id*. (explaining that for a claim to be tolled based on extraordinary circumstances, "the plaintiff [must] have been kept from the courts by legal barriers or by truly extraordinary events, like wars").

[39] *See, e.g.*, *Espinoza-Matthews v. California*, 432 F.3d 1021, 1028 (9th Cir. 2005) (holding that habeas petitioner was entitled to equitable tolling where "[f]or nearly 11 months, despite his diligence, [he] could not obtain his legal papers"); *Lott v. Mueller*, 304 F.3d 918, 922-25 (9th Cir. 2002) (holding that separation from legal papers during
(continued...)

rule for civil suits brought by inmates, and the legislature specifically removed incarceration as a ground for tolling a statute of limitations in 1986.[40] Accordingly, we conclude that Richardson's separation from his legal documents was not grounds to toll the statute of limitations.

**B.   The Superior Court Was Not Required To More Liberally Construe Richardson's Pleadings.**

In both appeals, Richardson argues that the superior court "was in error when it failed to construe liberally the motions of a pro-se litigant."  In particular, he asserts that "[t]he court should have construed liberally [his] motions and other filings where he indicated he was on 23 hour lockdown at Anchorage Jail for 6 days when his cell mate had committed suicide and everything in [his] cell was held as evidence . . . ."  It is true that neither Judge Easter nor Judge Rindner expressly addressed this precise issue.  But as we conclude above, separation from legal papers does not provide a basis for equitably tolling the statute of limitations under Alaska law.  Accordingly, Richardson was not prejudiced by any failure to more liberally construe his pleadings.

Similarly, Richardson appears to argue that in both cases, the court should have more liberally construed his motions regarding his alleged mental incompetence.

---

[39]   (...continued)
two institutional transfers could warrant equitable tolling).

[40]   *See* ch. 88, § 1, SLA 1986.  The statute used to provide,

> If a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues . . . imprisoned on a criminal charge, or in execution under sentence of a court for a term less than the person's natural life, the time of the disability is not a part of the time limited for the commencement of the action.

Former AS 09.10.140 (1986).

But because Richardson failed to raise a genuine issue of material fact as to his mental competency, a more liberal construction of his motions would not affect the ultimate disposition of his case.

C. **The Superior Court Was Not Required To Appoint Counsel For Richardson.**

"There is no general right to counsel in civil cases under the United States or Alaska Constitutions,"[41] though under Alaska law, "[t]he provision of publicly-funded counsel in some child custody, parental [rights] termination, and involuntary commitment cases is a notable exception to this rule."[42] In *Midgett v. Cook Inlet Pre-Trial Facility*, we considered an analogous case of an indigent pro se plaintiff who brought an excessive force suit against a correctional facility.[43] Because "[the inmate's] claim [did] not fall into one of the already recognized exceptions for appointment of counsel in a civil proceeding," this court applied the balancing test articulated in *Mathews v. Eldridge* to "determine what process [was] due . . . ."[44] This court noted that "[t]he private interest of a litigant in having counsel in a tort case is not as strong as the interests involved in cases where we have already afforded appointed counsel," and that

---

[41] *Azimi v. Johns*, 254 P.3d 1054, 1061 (Alaska 2011).

[42] *Id*. at 1061 n.19. Richardson argues that his alleged mental incompetence is another exception. Even if this were the case, Richardson failed to raise a genuine issue of material fact as to his mental competence.

[43] 53 P.3d 1105 (Alaska 2002).

[44] *Id*. at 1111; *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ("[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest . . . .").

"[a] claimant's economic interest in recovering money damages is not particularly compelling under *Mathews v. Eldridge.*"[45]  Accordingly, we held that although the inmate "would undoubtedly have had a better chance with a lawyer, the failure of the superior court to appoint counsel in his tort claim did not violate his due process rights."[46]

Under this well-established precedent, Richardson had no right to appointed counsel in this case, and neither superior court erred by denying his request.

**D.    An Evidentiary Hearing Was Required Only In Richardson's Case Before Judge Rindner.**

As this court has explained, "the task of interpreting and applying a statute of limitations traditionally falls within the province of the courts; so when a factual dispute precludes entry of summary judgment the dispute must ordinarily be resolved by the court at a preliminary evidentiary hearing in advance of trial."[47]  Richardson argues in both appeals that the superior court erred by denying his requests for an evidentiary hearing.  He argues that such a hearing would have allowed him to "more fully develop[] the record" regarding his mental competency, his diligence in pursuing his claim, and the circumstances entitling him to equitable tolling.

We conclude that further proceedings were indeed necessary in the case before Judge Rindner on the disputed issue of when Richardson commenced his second suit.  Because Judge Rindner correctly rejected Richardson's other arguments regarding the statute of limitations, however, no evidentiary hearing was required on these issues.  Because Richardson failed to raise a genuine issue of material fact countering the statute

---

[45]    *Midgett*, 53 P.3d at 1111-12.

[46]    Id. at 1112.

[47]    *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005).

of limitations defense in his case before Judge Easter, the court was not required to grant Richardson an evidentiary hearing in that suit.

**E.    Richardson Waived Any Argument Regarding The State Of Alaska's Motions To Dismiss.**

The State argues that Richardson fails to raise any argument regarding the State's dismissal from his suits, and we agree. In both proceedings below, the State moved to dismiss on the grounds that Richardson failed to allege any facts in his complaints relating to the State's conduct. On appeal, Richardson neither addresses this argument nor mentions any aspect of the State's alleged conduct. He therefore fails to properly raise this issue on appeal.

## V.    CONCLUSION

In the case before Judge Easter, we AFFIRM the order dismissing Richardson's case in its entirety.

In the case before Judge Rindner, we VACATE the order granting the Municipality's motion to dismiss and remand for further proceedings regarding Richardson's date of filing. On all other issues, including the dismissal of the State, we AFFIRM.