*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TIMOTHY JONES, | ) | |
| | ) | Supreme Court No. S-15951 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-14-01350 CI |
| v. | ) | |
| | ) | O P I N I O N |
| RANDALL WESTBROOK, | ) | |
| | ) | No. 7127 - September 23, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Paul D. Kelly, Kelly & Patterson, Anchorage, for Appellant. Patricia R. Hefferan, Wasilla, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Fabe, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

A client personally financed the sale of his business corporation. His attorney drafted documents that secured the buyer's debt with corporate stock and an interest in the buyer's home. Over seven years later the government imposed tax liens on the corporation's assets; according to the client, it was only then he learned for the first time that his attorney had not provided for a recorded security interest in the

physical assets. The client sued the attorney for legal malpractice and violation of the Alaska Unfair Trade Practice and Consumer Protection Act (UTPA).

The superior court held that the statute of limitations barred the client's claims and granted summary judgment to the attorney. But we conclude that it was not until the tax liens were filed that the client suffered the actual damage necessary for his cause of action to be complete. We therefore reverse the judgment of the superior court and remand the case for further proceedings.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Timothy Jones owned Northern Heating & Air Conditioning, Inc., which did business under that name. In 2003 he retained attorney Randall Westbrook, who had done work for him in the past, to represent him in the sale of the corporation. According to Jones, Westbrook told him that he had been involved in a number of similar transactions and was confident he could handle this one.

Jones decided to sell Northern Heating to his service manager, Mike Grunwald. Grunwald was unable to secure outside financing, so Jones decided to finance the sale himself. Westbrook prepared a stock purchase agreement, deed of trust, promissory note, and security agreement. The stock purchase agreement conveyed Northern Heating's 1,000 shares of issued stock to Grunwald for $280,000. Grunwald gave Jones a $10,000 down payment and executed a promissory note for the remaining $270,000 at 8% interest with monthly payments of $3,816.90. The security agreement secured Grunwald's payment of the promissory note with the "1,000 shares of common stock," while the deed of trust gave Jones additional security in the home owned by Grunwald and his wife. Jones and the Grunwalds signed the documents on July 13, 2004.

Jones and Westbrook both agree that they discussed "the perils of owner financing," but they remember the conversation differently. According to Jones, he believed Westbrook would ensure that "the business assets [were] tied up in the sale" and that he would have "everything tied up, the stock, inventory, equipment, the assets of Northern Heating" as security. But according to Westbrook, Jones instructed him not to take a security interest in the physical assets because another creditor already had an interest in them. Westbrook also testified that he "would have encouraged [Jones] to take a security interest in those assets" if he had known that in fact no other security interest existed.

Grunwald made payments on his debt to Jones, but he "was short" on some payments and requested extensions on others. Jones testified that when Grunwald missed payments the two men would meet, talk about the business, and work out a partial payment. Jones testified that the first time Grunwald came up short, in "mid[-]2005," Jones "walked through the warehouse and offices, and noted the inventory and equipment, and knowing that the assets were secure, [he] felt comfortable with [the parties'] agreement." On October 18, 2005, the manager of the escrow account through which Grunwald made his payments sent Jones his first official notice that Grunwald had missed one. But Grunwald continued to make payments of varying amounts through February 2012.

In August 2008 the Internal Revenue Service filed a tax lien against Northern Heating, but it released the lien in October of that year. According to Grunwald, he learned in 2009 that his bookkeeper had not been paying withholding taxes. He negotiated with the IRS and eventually thought he was "making . . . good headway on paying the back taxes," but the IRS placed two more liens on the corporation's assets in October and November 2011. In February 2012 the IRS notified

Grunwald it was closing Northern Heating and selling its assets. Grunwald informed Jones, who later attested that this "was the first time I heard that Northern Heating had any tax problems."

According to Jones, he met with Grunwald's accountant the next day, and the two of them called the IRS. The IRS told Jones the amount of the tax lien and informed him it had no record that he had a security interest in Northern Heating's physical assets. Jones contacted Westbrook, who confirmed the absence of a security interest. Jones asserts that this was when he first learned that Grunwald's debt was not secured by the corporation's physical assets. In August 2012, after Northern Heating was liquidated by the IRS, Jones terminated the escrow account. Grunwald still owed him $330,316.69, including interest.

After Jones filed a complaint against Westbrook for legal malpractice, Westbrook admitted that he probably did not have malpractice insurance while representing Jones. Jones asserted that he would have found a different lawyer had he known Westbrook was uninsured but that Westbrook never gave him notice of that fact. Westbrook testified in a deposition that he could not find a written fee agreement signed by Jones and that he could not say whether he had provided his client with written notice that he lacked malpractice insurance, as required by the attorney ethics rules.[1]

### B. Proceedings

Jones filed his complaint against Westbrook on December 19, 2013, alleging: (1) legal malpractice and violation of the Unfair Trade Practices and Consumer

---

[1] Alaska R. Prof. Conduct 1.4(c) (providing that "[a] lawyer shall inform an existing client in writing if the lawyer does not have malpractice insurance of at least $100,000 per claim and $300,000 annual aggregate" and "shall maintain a record of these disclosures for six years from the termination of the client's representation").

Protection Act (UTPA) based on Westbrook's alleged failure to properly document the sale of Northern Heating; and (2) violation of the UTPA based on Westbrook's alleged deception in holding himself out as experienced in selling businesses. Westbrook raised the statute of limitations as a defense. Jones later amended his complaint to claim that Westbrook also violated the UTPA when he failed to disclose his lack of malpractice insurance. The parties cross-moved for summary judgment; Jones requested an evidentiary hearing on the statute of limitations.[2]

The superior court conducted an evidentiary hearing on the statute of limitations over two days in February and March 2015; both Jones and Westbrook testified. The court then granted Westbrook's motion for summary judgment, holding that Jones's claims had been filed too late. The court found that the date of injury for Jones's UTPA and legal malpractice claims was July 13, 2004, the date he and Grunwald signed the sale documents. The court further found that the discovery rule tolled the statute of limitations until October 18, 2005 — the date the escrow manager first notified Jones of a late payment. At that point, the court reasoned, a "prudent businessman . . . would have reread the terms of the transaction to assure the assets were secured" and, finding that they were not, would have contacted his attorney. The court concluded that Jones's claims accrued once he was on inquiry notice that Grunwald's payments were not secured by the corporation's physical assets. The court therefore held that Jones's UTPA claim expired on October 18, 2007 (because of the two-year statute of limitations

---

[2] *See Richardson v. Municipality of Anchorage*, 360 P.3d 79, 91 (Alaska 2015) (explaining that "when a factual dispute precludes entry of summary judgment [on a statute of limitations defense,] the dispute must ordinarily be resolved by the court at a preliminary evidentiary hearing in advance of trial" (quoting *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005))).

for UTPA claims[3]) and his legal malpractice claim expired on October 18, 2008 (because of the three-year statute of limitations for professional malpractice claims[4]).

Jones appeals from the superior court's grant of summary judgment, arguing that his claims did not accrue until he learned in February 2012 that the IRS was asserting a security interest in Northern Heating's assets. He also appeals the superior court's denial of summary judgment in his favor.

## III. STANDARDS OF REVIEW

We review a grant of summary judgment de novo.[5] A claim's accrual date "is a factual question, which we review for clear error."[6] "When the superior court holds an evidentiary hearing to resolve factual disputes about when a statute of limitations began to run," we review those findings for clear error.[7] Clear error exists when the record as a whole "leaves us with 'a definite and firm conviction that a mistake has been

---

[3] AS 45.50.531(f) ("A person may not commence an action under this section more than two years after the person discovers or reasonably should have discovered that the loss resulted from an act or practice declared unlawful by AS 45.50.471.").

[4] *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 396 (Alaska 2014) (explaining that "Alaska applies a three-year statute of limitations for professional malpractice actions" and citing AS 09.10.053).

[5] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014) (citing *Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013)).

[6] *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1271 (Alaska 2013) (citing *Sengupta v. Wickwire*, 124 P.3d 748, 752 (Alaska 2005)).

[7] *Christianson*, 318 P.3d at 396 (citing *Williams v. Williams*, 129 P.3d 428, 431 (Alaska 2006)).

made.' "[8] But "we review de novo the legal standard used to determine accrual dates."[9]

## IV. DISCUSSION

### A. Jones's Legal Malpractice Claim Did Not Accrue Until He Suffered An Appreciable Injury.

A legal malpractice claim has four elements: duty, breach, causation, and damages.[10] A plaintiff bringing such a claim must show:

> (1) that the defendant has a duty "to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise," (2) that the defendant breached that duty, (3) that the breach proximately caused the injury, and (4) that actual loss or damage resulted from the negligence.[11]

The cause of action does not accrue until all four elements are satisfied.[12] Thus, regardless of when the duty is breached, the cause of action does not accrue and the statute of limitations ordinarily does not begin to run until "the date on which the plaintiff incurs injury."[13]

---

[8]   *Jarvill v. Porky's Equip., Inc.*, 189 P.3d 335, 338 (Alaska 2008) (quoting *John's Heating Serv. v. Lamb*, 129 P.3d 919, 922 (Alaska 2006)).

[9]   *Gefre*, 306 P.3d at 1271.

[10]   *Stewart v. Elliott*, 239 P.3d 1236, 1240 (Alaska 2010).

[11]   *Id.* (quoting *Shaw v. State, Dep't of Admin., Pub. Def. Agency*, 816 P.2d 1358, 1361 n.5 (Alaska 1991)); *see also Linck v. Barokas & Martin*, 667 P.2d 171, 173 n.4 (Alaska 1983).

[12]   *See Jarvill*, 189 P.3d at 340 ("The essence of [defendant's] argument . . . is that [plaintiff's] cause of action accrued before all of its essential elements had ripened. But our previous decisions do not suggest such a rule.").

[13]   *Id.* at 338 (quoting *Russell v. Municipality of Anchorage*, 743 P.2d 372, 375 (Alaska 1987)).

In this case the superior court concluded that Jones's injury occurred on July 13, 2004, when Jones and Grunwald signed the sale documents that Westbrook prepared. The court then applied the discovery rule, which tolls the statute of limitations until "the plaintiff has information sufficient to alert a reasonable person to the fact that he has a potential cause of action" or should begin to inquire about that possibility.[14] The court found that Jones was on inquiry notice that the sale was not properly secured on October 18, 2005, when the escrow manager first notified him that Grunwald had missed a payment. Applying the three-year statute of limitations applicable to professional malpractice claims,[15] the court concluded that Jones's complaint, filed in December 2013, failed to meet the filing deadline by over five years.

Jones contends on appeal that his cause of action did not accrue until the IRS asserted its lien in late 2011 because "[a]t any time up to that point, Jones could have secured the assets and maintained a priority position"; he argues that he suffered no appreciable injury until "he lost that option to the IRS lien." Our prior cases support Jones's position.

---

[14] *Preblich v. Zorea*, 996 P.2d 730, 734 (Alaska 2000) (quoting *Pedersen v. Zielski*, 822 P.2d 903, 908 (Alaska 1991)); *see also Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 509 (Alaska 2015) (explaining that under the discovery rule, "the relevant inquiry is the date when the claimant reasonably should have known of the facts supporting her cause of action" (quoting *Gefre*, 306 P.3d at 1275)).

[15] *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 396 (Alaska 2014) (citing AS 09.10.053); *see also Gefre*, 306 P.3d at 1272-73 (applying statute of limitations for contract claims to legal malpractice claims); *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 855 (Alaska 1991) (applying contract statute of limitations to professional malpractice claims involving economic loss).

The plaintiff in *Austin v. Fulton Insurance Co.* sought coverage in 1961 against "all risk of loss" but received an insurance policy that did not cover earthquake damage.[16] After the 1964 earthquake the plaintiff sued the insurance company for misrepresenting the policy; the company responded that his cause of action had accrued in 1961 when he received the policy with less coverage than he asked for.[17] As basic principles we noted that "[t]he statute of limitation as to torts does not usually begin to run until the tort is complete" and that "[a] tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff."[18] We identified the plaintiff's legally protected interest in *Austin* as "being protected against earthquake loss"; we concluded that "[t]here was no invasion, or infringement upon or impairment of such interest until there had been a loss by earthquake, because until that event occurred such protection could avail appellant nothing."[19] We therefore held that the statute of limitations did not begin to run until 1964, when the plaintiff suffered loss as a result of the insurance company's alleged negligence.[20]

In *Thomas v. Cleary* the plaintiffs sued their accountants for mishandling the sale of their corporation and potentially exposing them to tax liability in the process.[21] We held that the malpractice action was premature because the plaintiffs had "not suffered the required injury or harm as a result of the defendants' negligence" — the IRS

---

[16] 444 P.2d 536, 537, 539 (Alaska 1968).

[17] *Id.* at 539.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 539-40.

[21] 768 P.2d 1090, 1091 (Alaska 1989).

had not yet determined whether the plaintiffs were actually liable for the taxes at issue.[22] We held that "nominal damages, speculative harm, or the threat of future harm" was not enough to establish a cause of action.[23]

We addressed the issue again in *Christianson v. Conrad-Houston Insurance*, in which an insured was sued by an injured employee.[24] The insurer notified the insured that it was investigating whether the claim was covered by his policy and that in the meantime he must pay for his own defense.[25] The insured hired an attorney and began incurring legal fees; eighteen months later the insurer denied coverage.[26] Another two years later the insured sued his insurance broker for allegedly failing to acquire adequate coverage, but the superior court held that the statute of limitations had expired, having begun to run when the insured first incurred legal expenses.[27] We affirmed, holding that the insured's payment of the legal fees — an out-of-pocket loss that he was

---

[22] *Id.* at 1093.

[23] *Id.* at 1092 (quoting *Budd v. Nixen*, 491 P.2d 433, 436 (Cal. 1971)). The Restatement (Third) of the Law Governing Lawyers likewise concludes that "the statute of limitations does not start to run until the lawyer's alleged malpractice has inflicted significant injury." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 54 cmt. g (AM. LAW INST. 2000). According to the Restatement, a client is not injured by an arguably unenforceable contract "until the other contracting party declines to perform or the client suffers comparable injury" because "[u]ntil then, it is unclear whether the lawyer's malpractice will cause harm." *Id.*

[24] 318 P.3d 390, 393 (Alaska 2014).

[25] *Id.* at 394.

[26] *Id.*

[27] *Id.* at 395-96.

aware might not be reimbursed — satisfied the damage element of his malpractice cause of action.[28]

In this case the superior court found that Jones was injured when he and Grunwald signed a sale document that failed to secure Jones's interest in the business assets. The court reasoned that once Jones had contracted for an inadequate security interest, the attorney's alleged failure to meet his professional duty of care had injured Jones and the malpractice claim accrued.

But Jones did not suffer any appreciable injury at the time the sale documents were signed in 2004. Like the plaintiffs in *Austin*, Jones received a contract that was less than he allegedly expected it to be, since it failed to give him a security interest in the corporation's physical assets. But as long as Grunwald substantially abided by his contractual obligations, Jones had no reason to execute on a security interest and therefore suffered no actual injury from being unable to do so.[29]

Nor did Jones suffer an appreciable injury in October 2005, when the escrow manager first notified him that Grunwald had missed a payment. Jones agreed to extend Grunwald's payments at that time and to work out an alternative arrangement rather than foreclose on the debt. Because the stock purchase agreement allowed this

---

[28]   *Id.* at 398-400.

[29]   The Iowa Supreme Court recently analyzed a similar case to reach the same legal conclusion. In *Vossoughi v. Polaschek*, the plaintiffs sued their attorney for legal malpractice after a buyer defaulted on a sale that was not properly secured. 859 N.W.2d 643, 646-647 (Iowa 2015). The court held that until the buyer stopped paying, "it was entirely possible the plaintiffs would have continued collecting contract payments without disruption" and that the defect "would cause the sellers no actual injury"; as long as the buyer made payments, "the plaintiffs suffered only the prospect of future harm." *Id.* at 652-53. The court found that the earliest "plaintiffs' injuries became actual and nonspeculative" was when the buyer defaulted. *Id.* at 654.

forbearance without waiving "any obligation of Debtor or right of Secured Party," Jones again suffered no injury. And Grunwald continued to make at least partial or late payments through February 2012. Jones was satisfied with the parties' arrangement and did not attempt to use any remedies he would have had as a secured party; he therefore continued to suffer no harm from his lack of a security interest.[30]

Jones did suffer an appreciable injury in late 2011. The IRS recorded liens on Northern Heating's physical assets on October 31 and November 14 of that year; at that time Jones lost his ability to acquire anything greater than junior lienholder status. Since the legally protected interest at issue was Jones's ability to recover the corporation's physical assets in case of the buyer's default, this was clearly an appreciable injury. We conclude that Jones's professional malpractice claim accrued on October 31, 2011.[31]

The three-year statute of limitations for the malpractice claim therefore expired on October 31, 2014. Because Jones filed his complaint in December 2013, within the time allowed, it was clear error to find the action barred by the statute of limitations.[32]

---

[30] *Cf. id.* at 652.

[31] The IRS also recorded a lien on August 8, 2008, but released it two months later. Westbrook does not argue that Jones was aware of the 2008 lien, and it did not alter Grunwald's payment habits. It therefore caused Jones no appreciable injury.

[32] Jones contends that he did not have notice of the 2011 IRS liens until February 2012, when Grunwald informed him of the impending liquidation of the business. Because we decide that Jones's malpractice claim accrued less than three years before he filed suit, we need not address whether the discovery rule could have extended the limitations period in this context. We address it below in the context of the two-year statute of limitations on UTPA claims, where it could make a difference to the result.

**B.** **Jones's UTPA Claims Accrued When He Suffered Ascertainable Loss Of Property Or Money, But The Limitations Period May Be Extended By The Discovery Rule.**

The Unfair Trade Practices and Consumer Protection Act (UTPA), AS 45.50.471-.561, regulates deceptive acts or unfair practices in the conduct of trade. Attorneys are not exempt from liability under the UTPA; its regulatory system coexists with the mandates of the Alaska Rules of Civil Procedure and Rules of Professional Conduct.[33]

The UTPA provides that "[a] person who suffers an ascertainable loss of money or property" as a result of an unlawful act as defined by AS 45.50.471 may bring a civil action for recovery.[34] Such actions are governed by a two-year statute of limitations, which begins to run "after the person discovers or reasonably should have discovered that the loss resulted from an act or practice declared unlawful by AS 45.50.471."[35] The statute of limitations begins to run once the injury is discovered or reasonably discoverable, regardless of whether the plaintiff knows that the defendant's conduct was illegal.[36] However, as noted above, the statute of limitations may be tolled by the discovery rule until "the plaintiff has information sufficient to alert a reasonable

---

[33] *Pepper v. Routh Crabtree, APC*, 219 P.3d 1017, 1023-25 (Alaska 2009).

[34] AS 45.50.531(a); *see also State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 524 (Alaska 1980) (noting that "[t]he Attorney General is charged with enforcement of the Act" but that private actions are authorized "for recovery of actual damages").

[35] AS 45.50.531(f).

[36] *Weimer v. Cont'l Car & Truck, LLC*, 237 P.3d 610, 614 (Alaska 2010).

person to the fact that he has a potential cause of action."[37]  "[T]he discovery rule operates only to lengthen — and never to shorten — the limitations period."[38]

Jones alleges three violations of the UTPA:  (1) that Westbrook misrepresented himself "as an attorney with legal expertise in the sales of businesses"; (2) that Westbrook failed to inform Jones in writing that he lacked malpractice insurance; and (3) that Westbrook failed to properly advise and document the sale of Northern Heating.  As it did in its analysis of Jones's malpractice claim, the superior court held that any injury Jones suffered for purposes of the UTPA occurred in July 2004, when he signed the sale documents, but that the limitations period was extended by the discovery rule to October 2005, when Jones was first notified by the escrow manager that Grunwald had missed a payment.

Consistent with our discussion above, however, we conclude that Jones did not suffer an "ascertainable loss of money or property" for purposes of AS 45.50.531(a) in either July 2004 or October 2005.  When Jones became bound by the sale documents in 2004 he suffered only the threat of future damage; and he suffered no ascertainable loss in 2005 because he never sought to employ the lienholder remedies he mistakenly thought had been reserved for his use.  Jones's first "ascertainable loss" occurred when the IRS recorded its security interest in Northern Heating's physical assets in October

---

[37]     *Preblich v. Zorea*, 996 P.2d 730, 734 (Alaska 2000) (quoting *Pedersen v. Zielski*, 822 P.2d 903, 908 (Alaska 1991)); *see also Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 397 (Alaska 2014) ("[A] person reasonably should know of his cause of action when he has sufficient information to prompt an inquiry into the cause of action." (quoting *Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991))).

[38]     *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1274 (Alaska 2013) (citing *Jarvill v. Porky's Equip., Inc.*, 189 P.3d 335, 339 (Alaska 2008)).

2011, preempting Jones's ability to fix the alleged mistake in the sale documents and properly secure Grunwald's payments on the promissory note.[39]

Jones contends that he was not aware of Northern Heating's tax problems or that the IRS had asserted liens on the corporation's assets until February 2012, several months after the liens were recorded. We have held that a plaintiff should not be charged "with constructive notice of publicly recorded facts absent a finding that the plaintiff was already on inquiry notice."[40] Because the superior court's findings about inquiry notice focused on Grunwald's missed payment in 2005, the factual record is undeveloped as to whether Jones had inquiry notice of the IRS liens before Grunwald told him about them in February 2012. But absent a finding that he had earlier inquiry notice, Jones's complaint filed in December 2013 was within the two-year statute of limitations for UTPA claims.

Finally, we note that even Jones's notice of the IRS liens would not seem sufficient to put him on inquiry notice as to one of his claims: that Westbrook violated the UTPA by failing to inform his client in writing that he lacked malpractice insurance.

---

[39]    We recognize that there may well be a difference in value between a secured promissory note and an unsecured promissory note for the same amount, and that this difference in value may sometimes be "ascertainable" — albeit nominal or largely speculative — before the debtor has defaulted and the unsecured creditor suffers the *appreciable* loss necessary to a cause of action for professional negligence. There is no evidence of the documents' intrinsic value in this case. And even if Jones suffered an "ascertainable" loss when the loan documents were signed in 2004, the discovery rule would toll the limitations period until Jones had reason to know of Grunwald's IRS liens. *See Weimer*, 237 P.3d at 615 (holding that "the UTPA's statute of limitations begins to run when a consumer discovers or reasonably should have discovered [that] the prohibited conduct caused a loss").

[40]    *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 510 (Alaska 2015).

Absent evidence not apparent from the record, the earliest Jones could reasonably have discovered this claim was after he filed the complaint and requested insurance information from Westbrook; until then, having received no written disclaimer, Jones could reasonably assume that Westbrook was insured against malpractice claims.

**C.      We Decline To Reach The Merits Of Jones's Motion For Summary Judgment Against Westbrook.**

Jones also appeals the superior court's denial of his motion for summary judgment on his claims against Westbrook, in which he sought to establish as a matter of law both Westbrook's liability and the amount of his own damages. From the context of the summary judgment order, we conclude that the superior court simply denied Jones's motion as moot without considering its substance, having decided the case in Westbrook's favor on statute of limitations grounds. We decline to address Jones's motion before the superior court has done so, and we express no view on its merits.

## V.      CONCLUSION

We REVERSE the superior court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.