Christine L. CIKAN, Appellant,

v.

ARCO ALASKA, INC., Appellee.

No. S–10915.

Supreme Court of Alaska.

Dec. 16, 2005.

Max F. Gruenberg, Jr., Gruenberg, Clover & Holland, Anchorage, for Appellant.

Andrew Guidi, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

Eight and a half years after injuring herself in a slip-and-fall accident outside the ARCO building in Anchorage, Christine Cikan sued ARCO for damages, claiming that her delayed action was timely because her injury had made her incompetent. The superior court dismissed Cikan's case on summary judgment, rejecting her claim of incompetency and concluding that her suit was barred by the statute of limitations. We reverse and remand, holding that Cikan raised a genuine issue of material fact as to her competency and that this dispute precluded summarily dismissing her action as time-barred. But because disputes involving compliance with the statute of limitations present preliminary issues of fact that must ordinarily be decided by the court before trial, we further hold that, on remand, the superior court must resolve the factual dis-

pute over Cikan's competency by conducting a pretrial evidentiary hearing.

## II. FACTS AND PROCEEDINGS

In December 1991 Christine Cikan slipped and fell on ice outside the ARCO building in Anchorage, hitting her head and suffering a concussion. Some time after the accident Cikan contacted attorney Joseph Kalamarides's office and spoke to Kalamarides by telephone about representing her in a workers' compensation claim related to her accident. Kalamarides declined the case but gave Cikan the names of two other attorneys who handled workers' compensation cases. Kalamarides also told Cikan that she might have a separate personal injury claim against ARCO and that she had two years from the date of the accident to file that claim. In November 1993 Kalamarides sent Cikan a letter confirming their conversation and repeating this information.

In December 1995, four years after her accident, Cikan filed a pro se complaint against Kalamarides, accusing him of malpractice for allowing her claim against ARCO to expire. Specifically, Cikan alleged that she had contacted Kalamarides's office about six months after her accident and had extensively discussed the case with him and his staff; that Kalamarides agreed to represent her in pursuing a claim against ARCO; but that he changed his mind at the last minute, claiming that he was too busy. By then, Cikan claimed, it was too late for her to find substitute counsel.

Kalamarides denied these allegations and moved for summary judgment, insisting that Cikan had spoken to him only once, primarily about her workers' compensation claim; that he had never agreed to represent her; and that he had referred her to another attorney before her time to file the claim expired. Cikan evidently did not oppose Kalamarides's

motion for summary judgment. The superior court dismissed Cikan's claim in 1996.

In April 2000, more than eight years after her accident and three and a half years after her suit against Kalamarides was dismissed, Cikan sued ARCO for the injuries she sustained in her 1991 fall. Her complaint acknowledged that she had not filed the action within the specified two-year time limit, but alleged that this delay was "due to her injuries."

ARCO moved for summary judgment, asserting that Cikan's claim was barred by the two-year statute of limitations for personal injury actions. ARCO's motion noted that Cikan apparently intended to claim that the statutory limit had been tolled by mental incapacity, but ARCO insisted that she had failed to offer "a shred of evidence that she is or was incompetent by reason of mental illness or mental disability." And even assuming that the 1991 accident resulted in mentally disabling injuries, ARCO contended, Cikan's suit against Kalamarides conclusively demonstrated that she had recovered her competency by 1995, when that action was filed:

> Her allegations in her *pro se* complaint against Joseph Kalamarides demonstrate (1) that the plaintiff understood all the elements of her personal injury cause of action, (2) that she understood the statute of limitations, and (3) that she was capable of making "prompt and diligent efforts" in this matter.

In opposing ARCO's motion,[1] Cikan filed an affidavit from Dr. Aron Wolf, a psychiatrist who had recently examined Cikan and diagnosed her as suffering from "post-concussion syndrome originating from a concussion that she sustained as a result of a fall on December 17, 1991." Dr. Wolf stated that her condition manifested itself in "confusion, personality changes, disorganization, and severe decrements in mathematical ability."

---

1. Cikan initially failed to file a timely response to ARCO's motion; the superior court granted summary judgment to ARCO, noting that no opposition had been filed. Cikan then submitted an opposition and moved to set aside the summary judgment order, asking the court to accept her untimely opposition. The superior court granted Cikan's motion, set aside the initial summary judgment order, accepted her opposition, and ruled anew on the summary judgment motion after allowing ARCO an opportunity to reply to Cikan's opposition. On appeal ARCO does not contest the superior court's decision vacating its initial summary judgment order and accepting Cikan's late opposition.

Dr. Wolf further explained: "On review of the records, it is clear to me that the picture of the symptoms of the post-concussion syndrome did not become evident to either Ms. Cikan or her physicians until a number of years after the accident and thus not filing the lawsuit until she was aware of her symptom complex would be consistent with her injuries." In addition to Dr. Wolf's affidavit, Cikan's opposition included voluminous records intended to document her post-accident employment history and medical treatment, as well as many affidavits from family members and acquaintances, who generally described changes in Cikan's behavior and mental state consistent with the symptoms detected by Dr. Wolf.

In addition, Cikan filed a verified memorandum replying to ARCO's contention that her 1995 suit against Kalamarides amounted to conclusive proof of her competency when that action was filed. Cikan insisted that, because of the head injury she sustained in the 1991 accident, she "was not able to fully comprehend the circumstances" at the time of that suit, and "was not mentally able to file this lawsuit until [she] actually did so."

While acknowledging that her pleadings in the Kalamarides case could be viewed as circumstantial evidence of her understanding and competency, Cikan advanced an alternative explanation; disavowing her claims to the contrary in her complaint against Kalamarides, Cikan maintained:

I never met Mr. Kalamarides. I only spoke with him once, by phone. He could not see me and could not tell whether I understood the implications of what he was saying, specifically whether I understood the concept of a statute of limitations. I did not; nor did I understand the concept of tolling until after I had filed this lawsuit against ARCO. The fact that he even wrote me a letter may be reflective of (1) the fact that I was very confused when we talked, and (2) my head injury.

Cikan further pointed out that when she sued Kalamarides,

[t]he only document I filed in that case was the complaint, which was drafted by an attorney I had hired for that limited purpose. He would not represent me. Mr.

Kalamarides received summary judgment by default. As he stated in his affidavit, I had been totally confused about the number of times I had contacted him. Not only was I wrong factually, but I never should have sued him.

As explained in this affidavit, then, Cikan's suit against Kalamarides could be viewed as a sign of her ongoing incapacity; or as Cikan put it, "The very filing of that lawsuit shows my mental confusion four years after the accident."

The superior court rejected Cikan's claim of incompetency and granted ARCO's motion for summary judgment, concluding that the action was time-barred. Pointing to the pleadings and circumstances surrounding Cikan's 1995 action against Kalamarides, the court found:

The ... evidence demonstrates that she knew what her legal rights were and that she was taking steps to ensure that she filed a claim before the statute of limitations ran. In Cikan's December 15, 1995 complaint against Kalamarides, it is clear that she understood her rights as she stated that she made "diligent efforts" to retain another attorney as she knew the statute of limitations would run in December of 1993.

In the court's view, because Cikan clearly understood the statute of limitations in 1995, the various problems documented in the records and affidavits that she had filed did not suffice to raise an issue of fact concerning the timeliness of her claim. The court similarly found that Dr. Wolf's affidavit did not suffice to raise a genuine issue of material fact, emphasizing that "Dr. Wolf does not specifically state or raise an issue of fact that Cikan was mentally incompetent during the years 1991, 1992, 1993, or even through 1995. Nor does he state that she did not understand her legal rights." Finding no basis for tolling the statute of limitations under these facts, the court dismissed Cikan's claim.

Cikan appeals.

## III. DISCUSSION

We review questions of summary

judgment de novo.[2] "We will affirm a grant of summary judgment if there are no genuine issues of material fact and if the movant is entitled to judgment as a matter of law. When making this determination, we draw all reasonable inferences in favor of the non-movant."[3] The moving party has the initial burden of offering admissible evidence showing both the absence of any genuine dispute of fact and the legal right to a judgment.[4] Once the moving party has made a prima facie showing, the burden shifts to the non-moving party to produce "admissible evidence reasonably tending to dispute or contradict the movant's evidence."[5] "To defeat a motion of summary judgment an adverse party may not rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue of material fact. To create a genuine issue of material fact there must be more than a scintilla of contrary evidence."[6]

■ These same ground rules apply in summary judgment cases involving statute-of-limitations defenses.[7] But such cases present a procedural wrinkle: the task of interpreting and applying a statute of limitations traditionally falls within the province of the courts; so when a factual dispute precludes entry of summary judgment the dispute must ordinarily be resolved by the court at a preliminary evidentiary hearing in advance of trial.[8]

■ Here, Cikan was injured in 1991 and filed suit against ARCO nearly nine years later, in 2000. Her claim would ordinarily be barred by the two-year filing limit for personal injury claims set out in AS 09.10.070(a).[9] But Cikan claimed mental incompetency. Under AS 09.10.140(a), mental incompetency tolls the two-year filing limit.[10]

In its motion for summary judgment, ARCO asserted that Cikan's suit was time-barred, arguing that she had presented no evidence of incompetency. ARCO also offered medical evidence indicating that Cikan appeared to be mentally competent in 1993. In addition, ARCO pointed to Cikan's lawsuit against Kalamarides, insisting that her pleadings in that case provided conclusive evidence that she was mentally competent after the accident.

■ Because "the evidentiary threshold necessary to preclude the entry of summary judgment is low,"[11] Cikan could defeat ARCO's summary judgment motion by pre-

**2.** *Mechanical Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety,* 91 P.3d 240, 244 (Alaska 2004).

**3.** *Alakayak v. British Columbia Packers, Ltd.,* 48 P.3d 432, 447 (Alaska 2002).

**4.** *See Philbin v. Matanuska–Susitna Borough,* 991 P.2d 1263, 1265 (Alaska 1999).

**5.** *Id.* at 1265–66 (citations omitted).

**6.** *Martech Const. Co. v. Ogden Envtl. Servs., Inc.,* 852 P.2d 1146, 1149 n. 7 (Alaska 1993) (citation omitted).

**7.** *See John's Heating Serv. v. Lamb,* 46 P.3d 1024, 1033–34 (Alaska 2002).

**8.** *Id.* at 1034 n. 28 (citing *Pedersen v. Zielski,* 822 P.2d 903, 907 n. 4 & 908 (Alaska 1991); *Decker v. Fink,* 47 Md.App. 202, 422 A.2d 389, 394 (1980); *Shillady v. Elliot Cmty. Hosp.,* 114 N.H. 321, 320 A.2d 637, 639 (1974); *Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563, 567 (1973)).

**9.** AS 09.10.070(a) provides:

Except as otherwise provided by law, a person may not bring an action (1) for libel, slander, assault, battery, seduction, or false imprisonment, (2) for personal injury or death, or injury to the rights of another not arising on contract and not specifically provided otherwise; (3) for taking, detaining, or injuring personal property, including an action for its specific recovery; (4) upon a statute for a forfeiture or penalty to the state; or (5) upon a liability created by statute, other than a penalty or forfeiture; unless the action is commenced within two years of the accrual of the cause of action.

**10.** AS 09.10.140(a) provides:

Except as provided under (c) of this section, if a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues either (1) under the age of majority, or (2) incompetent by reason of mental illness or mental disability, the time of a disability identified in (1) or (2) of this subsection is not a part of the time limit for the commencement of the action. Except as provided in (b) of this section, the period within which the action may be brought is not extended in any case longer than two years after the disability ceases.

**11.** *John's Heating Serv.,* 46 P.3d at 1032.

senting evidence of incompetency that amounted to more than a "scintilla of contrary evidence." [12] No special or higher burden attaches to claims of mental incompetency. To the contrary, as we pointed out in *Adkins v. Nabors Alaska Drilling, Inc.*, "[c]ourts have interpreted liberally the type of mental condition that will toll a statute of limitations." [13] We noted in *Adkins* that the "general test [for incompetency] is whether a person could know or understand his legal rights sufficiently well to manage his personal affairs." [14] We then emphasized that this test becomes particularly lenient in the summary judgment context:

> Plaintiffs have engaged in a surprising amount of activity and still have successfully claimed to be incompetent under a tolling statute. This is especially true where a court would be required to hold as a matter of law that the plaintiff was competent, such as in a summary judgment motion or motion on the pleadings. In at least three cases, plaintiffs have retained attorneys, commenced actions prior to the limitations period and claimed the protection of a tolling statute to add an additional party after the limitations period. A Michigan court noted that a plaintiff's mental condition "might be such that, while somewhat aware, he is only partially aware of the circumstances entitling him to maintain an action; such a person may be only partially or imperfectly able to assist his lawyer in prosecuting the action." [15]

In granting ARCO's summary judgment motion, the superior court viewed Cikan's 1995 lawsuit against Kalamarides as conclusive evidence of competency. Yet as we stressed in this passage of *Adkins*, prior litigation and representation are not necessarily indicative of mental capacity, since awareness of an existing claim does not necessarily reflect a person's ability to assess and pursue it in a rational and effective manner.

Here, on its face, Cikan's complaint in the Kalamarides lawsuit evinced a clear understanding of the operation of the statute of limitations. This undeniably qualifies as strong, even compelling, evidence that Cikan met the *Adkins* test for competency; yet it is not necessarily conclusive evidence. If we credit Cikan's sworn account of the circumstances surrounding the prior lawsuit—as we must in reviewing the superior court's ruling on summary judgment—it offers an explanation consistent with her claim of mental disability. The comparative weakness of this competing evidence is not an issue to be weighed at summary judgment.

Nor does Dr. Wolf's failure to specifically say that Cikan was incompetent during the years immediately after her accident preclude his affidavit from qualifying as "more than a scintilla of contrary evidence" responding to ARCO's evidence of competency. In distinguishing *Adkins* and declining to find that case controlling here, the superior court emphasized that the medical experts' affidavits in *Adkins* were unequivocal. Yet *Adkins* did not rest its conclusion on the strength of that medical evidence. To the contrary, as already noted above, *Adkins* expressly emphasized that the test of mental incompetency is especially lenient at summary judgment. Here, if accepted as true, Dr. Wolf's expert opinion certainly qualifies as substantial evidence pointing to the possibility of accident-induced mental incapacity; an unequivocal and time-specific diagnosis ruling out competency was not required to raise a genuine issue of disputed fact on the issue. Because *Adkins* expressly recognizes that Alaska's incompetency statute "does not require a formal finding of incompetency by a court," [16] *Adkins* cannot fairly be read as suggesting that a formal finding of incompetency by a medical expert is necessary to raise a genuine issue of fact.

When considered in the light most favorable to Cikan, then, the totality of the evi-

---

**12.** *Meyer v. State, Dep't of Revenue, Child Support Enforcement Div.*, 994 P.2d 365, 368 (Alaska 1999).

**13.** 609 P.2d 15, 23 (Alaska 1980).

**14.** *Id.*

**15.** *Id.* (internal footnote omitted) (quoting *Davidson v. Baker–Vander Veen Constr. Co.*, 35 Mich. App. 293, 192 N.W.2d 312, 319 (1971)).

**16.** *Adkins*, 609 P.2d at 23.

dence in the record—including Dr. Wolf's affidavit, the other affidavits and documentation submitted by Cikan, and Cikan's own verified statement—readily meets the "more than a scintilla of contrary evidence"[17] standard necessary to create a genuine issue of material fact as to whether Cikan became incompetent during the two years immediately following her fall.

ARCO nevertheless argues that the affidavits and records Cikan attached to her opposition provided no support for her claim of incompetency, because they "consisted of inadmissible hearsay based on lay witness testimonials" or did not reflect on her condition in the years immediately after the 1991 accident.[18] But while this may be correct as to some of the exhibits, not all the affidavits can be so easily dismissed.[19] Taken together and viewed in the light most favorable to Cikan,

these records and affidavits provide substantial circumstantial evidence supporting Dr. Wolf's expert assessment.

▮▮▮ ARCO separately argues that Cikan's allegations against Kalamarides should be treated as binding judicial admissions that she cannot now dispute.[20] But ARCO's position overstates the binding effect of a judicial admission, which only extends to the case in which the admission was made: "Judicial admissions are not evidence at all but rather have the effect of withdrawing a fact from contention. Included within this category are admissions in the pleadings in the case.... Ordinary evidentiary admissions, on the other hand, may be controverted or explained by the party. Within this category fall the pleadings in another case[.]"[21]

---

**17.** *Martech Const. Co.,* 852 P.2d at 1149 n. 7.

**18.** We note that AS 09.10.140(a) refers to incompetency "at the time the cause of action accrues." Here, ARCO has not argued that Cikan's claim was time-barred as a matter of law because it failed to allege incompetency that already existed at the time of the accident or was immediately caused by the accident. ARCO simply contends that Cikan failed to introduce any evidence raising a genuine issue of material fact as to incompetency during the two years following her accident. Thus, the narrow question we consider in this case is whether Cikan produced sufficient evidence to raise a genuine question as to incompetency that might have tolled the deadlines for filing at some point during the two-year limitations period. We need not consider whether AS 09.10.140(a) should be strictly construed to cover only cases involving preexisting incompetency or incompetency occurring at the moment an accident occurs. *Compare, e.g., Kaiser v. Umialik Ins.,* 108 P.3d 876, 882 (Alaska 2005) (incompetence by reason of mental illness or disability "during the limitation period" tolls the statute of limitations for the duration of the disability) *with Williams v. Coughlan,* 244 F.2d 6, 8 (9th Cir.1957) (precursor to AS 09.10.140 tolled only by "the continuance of [a] disability which existed at the time the cause of action arose").

**19.** For example, an affidavit submitted by Tahni Warner Brotherton indicates that Brotherton has known Cikan since the summer of 1992. She describes how Cikan's life disintegrated during this period, declaring that "[i]t was apparent that she could not function at a most basic level." Brotherton explains that when she first met Cikan, "she appeared to have her life together. She was employed at Alyeska Ski Resort and drove a nice car.... Over the next few years I watched her lose all of this because she could no

longer work or keep her life together. The most basic life skills were beyond her capability." Similarly, an affidavit submitted by Jacqueline Sykes provides a before-and-after view of Cikan. Sykes states that she met Cikan in 1983, when Cikan was managing a restaurant in Anchorage where Sykes was a waitress. She describes Cikan as then being a very efficient and effective manager. Sykes subsequently left Alaska, and Cikan visited her in California in 1995. At the time of the visit, Sykes observes, "The person who I had known for 12 years had vanished and in her place [was] a broken person who could not remember daily events or memories from the past." The work records submitted by Cikan tend to corroborate these descriptions, indicating that Cikan encountered serious problems at work during 1992–93—including problems with time management, relations with other employees, and "the explosiveness of [her] temper"—and that she was ultimately dismissed in June 1993.

**20.** ARCO cites *Hayes v. Xerox Corp.,* 718 P.2d 929, 931–32 (Alaska 1986); *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.,* 125 F.3d 481, 483 (7th Cir.1997); and 30B Wright & Miller, Federal Practice & Procedure § 7026 (2004).

**21.** 30B Wright & Miller, Federal Practice & Procedure § 7026 (2004); *see also Bengtson v. Hines,* 457 A.2d 247, 250 (R.I.1983) ("[A] pleading in a separate cause of action is merely a 'quasi admission,' which is not conclusive in any sense. It is merely an inconsistency in a pleader's proof, which may be treated like any other admission or inconsistent statement for purposes of impeaching credibility.") (citations omitted); *cf. Universal Am. Barge Corp. v. J–Chem., Inc.,* 946 F.2d 1131, 1142 (5th Cir.1991) ("judicial admissions are not conclusive and binding in a separate case from the one in which the admissions were

In summary, because we find ample evidence to raise a genuine issue of material fact and no legal justification for treating Cikan's prior pleadings in the Kalamarides suit as currently binding admissions, we hold that it was error to dismiss Cikan's claim on summary judgment.

Our decision on this point leaves one question unanswered: how should this factual dispute over mental incompetency be resolved? In their briefing and at oral argument, both parties seemed to assume that the jury would have to decide the issue. But as we have already indicated above, disputes concerning the statute of limitations raise preliminary questions of fact that should ordinarily be decided by the court after conducting an evidentiary hearing. In the present case, then, the superior court should conduct a pretrial evidentiary hearing on remand to resolve ARCO's statute-of-limitations defense.[22]

## IV. CONCLUSION

We REVERSE the order granting summary judgment and REMAND for an evidentiary hearing to determine if Cikan's claim is time-barred.

EASTAUGH, Justice, not participating.

FABE, Justice, dissenting.

Christine Cikan's slip-and-fall accident occurred on December 17, 1991. When attorney Joseph Kalamarides declined Cikan's request that he handle her workers' compensation case related to the accident, he informed Cikan in writing that she had only two years from the date of the accident to file a personal injury claim against ARCO. Thus, Cikan was aware that she was required to file suit against ARCO by December 17, 1993. Yet Cikan did not file her lawsuit until April 2000. The court concludes that Cikan presented sufficient evidence of her mental incompetency to defeat ARCO's motion for summary judgment and prevent dismissal of her action as time-barred. But a careful examination of Cikan's evidence reveals that she presented virtually no evidence of mental incompetency during the relevant time period of 1991–1993. I therefore disagree with the court's decision to reverse the trial court's grant of summary judgment to ARCO.

In *Hernandez–Robaina v. State*, we focused on "[a]n individual's mental capacity to understand his or her rights, not whether the individual actually understood or knew of those rights, [as] the gravamen of mental incompetency under AS 09.10.140(a)(2)."[1] Thus, it is the individual's capabilities—whether Cikan *could* know or understand her legal rights sufficiently well to manage her personal affairs and not whether she *did* know or understand them—that forms the test for tolling the statute of limitations due to mental incompetency. "The central question is whether the individual would be able to comprehend the concepts and ideas of which his or her rights consist if those matters were adequately communicated."[2]

Cikan has failed to produce evidence demonstrating that she lacked the mental capacity to understand her rights during the relevant time period of December 1991–1993. As the superior court recognized, Dr. Wolf's affidavit did not state that Cikan was mentally incompetent or incapable of understanding her legal rights from the date of injury in 1991 until the running of the statute in 1993. And while I agree with the court that "a formal finding of incompetency by a medical expert" is not necessary to raise a genuine issue of material fact,[3] Dr. Wolf's diagnosis of Cikan in 2000 with post-concussion symptoms does not raise a genuine issue of material

made"); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir.1968) (same); *Hughes v. Hughes*, 363 P.2d 155, 158 (Okla.1961) ("The pleadings in a prior action of the same general character, though not conclusive upon a party, are of evidentiary force in a subsequent proceeding.").

**22.** Our reversal of the summary judgment order necessarily vacates the superior court's award of

attorney's fees to ARCO, making Cikan's separate challenge to the fee award moot.

**1.** 849 P.2d 783, 785 (Alaska 1993).

**2.** *Id.*

**3.** Maj. Op. at 340–341.

fact as to whether Cikan could understand her rights from 1991–1993.

Moreover, the testimony of Cikan's lay witnesses relied on by the court focuses on her inability to function after 1995, the year that she filed the malpractice lawsuit against Kalamarides. For example, Jacqueline Sykes's testimony is that when she saw Christine in 1995, she was not the same person that she had been in earlier years: "Christine came to see me in 1995 in California and I hardly recognized her." And Tahni Warner Brotherton *did not even meet* Cikan until the summer of 1992, six months after her accident, and at that time Cikan "appeared to have her life together." Thus, according to Brotherton, after her accident Cikan "was employed at Alyeska Ski Resort and drove a nice car. The jewelry and furniture she owned was very tasteful and well kept." According to Brotherton, "[o]ver the next few years I watched her lose all of this because she could no longer work or keep her life together."

Finally, there is nothing in the record that explains how Cikan could have filed her lawsuit against Kalamarides if she was mentally incompetent in 1995. She seems to misunderstand the *Hernandez–Robaina* test when she argues that her foolish strategy choice to sue Kalamarides should be viewed as a sign of her ongoing incapacity and maintains that "[t]he very filing of that lawsuit shows my mental confusion four years after the accident."

Although the threshold showing necessary to preclude entry of summary judgment is extremely low, as evidenced by this court's holding in *Meyer v. State,*[4] I cannot agree that Cikan has presented more than a "scintilla of contrary evidence" regarding her competency for the relevant 1991–1993 time period. The only evidence of Cikan's mental state during this period is the assessment of examining neurologist Dr. Kenneth Pervier, who concluded that in May 1993 Cikan's "[m]ental status examination was entirely within normal limits" and "[t]here is no evidence of a thought disorder." Given Cikan's

utter lack of evidence of mental incompetency during the relevant period of December 1991–1993, I am unable to concur that the superior court should conduct a pretrial evidentiary hearing regarding Cikan's competency. I would affirm the superior court's grant of summary judgment and therefore I respectfully dissent.

---

4. *Meyer v. State, Dep't of Revenue, Child Support Enforcement Div.,* 994 P.2d 365, 368 (Alaska 1999).