*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TIMOTHY G., | ) | |
| | ) | Supreme Court No. S-15725 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-07478 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | No. 7099 – April 29, 2016 |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Kevin G. Brady, Brady Law Office, Anchorage, for Appellant. Ali Moser Rahoi, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

BOLGER, Justice.

## I.     INTRODUCTION

Timothy G. asserted in the superior court that the statute of limitations had been tolled on his claim against the Office of Children's Services because he was mentally incompetent following years of abuse by his stepfather. The superior court held

an evidentiary hearing on this issue and concluded that Timothy had failed to prove that he was incompetent. On appeal, Timothy argues that the superior court should have ruled in his favor if he produced more than a scintilla of evidence to support his assertion. But we conclude that the superior court applied the proper burden of proof and the proper test for competency, and that the court did not clearly err in finding that Timothy did not prove his incompetence.

## II. FACTS AND PROCEEDINGS

Timothy G.[1] alleges he was abused by his stepfather repeatedly between 1997 and 2006. In 2006, Timothy reported the abuse to his mother. She took Timothy and his four siblings to a shelter, sought a protective order against the stepfather, and instituted divorce proceedings. The Office of Children's Services (OCS) then substantiated the report of harm, removed the children from their mother's care, and placed them in foster care.

On May 25, 2012, Timothy filed a complaint naming OCS and his stepfather as defendants.[2] He sought compensatory damages from OCS, claiming that "[a]s a direct and proximate consequence of [OCS's] breach of [its] dut[y] of care, [he] suffered physical injury, psychological and emotional injury and distress, psychological torment, torture and sexual abuse, pain and suffering, and resultant loss of earning capacity." Timothy alleged that OCS had investigated at least ten reports of harm involving him and his siblings, but had taken no action.

In response, OCS moved under Alaska Civil Rule 12(b)(6) to dismiss Timothy's claims as time-barred. It argued that the applicable statute of limitations

---

[1] We use a pseudonym in lieu of the party's name to protect his privacy.

[2] The superior court dismissed Timothy's claims against the stepfather because he was never properly served. Timothy does not appeal this order.

required Timothy's claim to be filed within two years of its accrual;[3] although the statute of limitations was tolled during Timothy's minority,[4] he turned 18 on May 27, 2009, but did not file his complaint until nearly three years later.

Timothy replied that he was incompetent by reason of mental disability and that the statute therefore remained tolled after his eighteenth birthday.[5] He stated that he had been diagnosed with "severe post[-]traumatic stress disorder, ADHD, [b]i-polar disorder, and obsessive compulsive disorder," stemming from his abuse at the hands of his stepfather.

Along with his opposition to OCS's motion to dismiss, Timothy submitted an affidavit from his friend Sarah G. describing his mental disability. Sarah met Timothy in 2008, and in 2010, when she learned he was homeless, she invited him to live in her home. She asserted that "based upon [her] personal involvement with [Timothy], his treating mental health care professionals[,] and various state and federal agencies, [it was her belief] that Timothy suffers from a mental disability."

The superior court treated OCS's motion to dismiss as a motion for summary judgment because in ruling on it the court considered matters outside of the pleadings, including Sarah's affidavit and OCS's responses to the affidavit.[6] The court

---

   **3**   *See* AS 09.10.070(a) (establishing a two-year limitations period for tort and personal injury claims).

   **4**   AS 09.10.140(a).

   **5**   *See id.* (tolling the limitations period "if a person entitled to bring an action . . . is at the time the cause of action accrues . . . incompetent by reason of mental illness or mental disability").

   **6**   *See* Alaska R. Civ. P. 12(b) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").

found that although Sarah's affidavit would be insufficient to establish Timothy's incompetency, "it [was] sufficient to overcome the low threshold that applies at the summary judgment stage." Accordingly, the court denied OCS's motion.

The court scheduled an evidentiary hearing to resolve the statute of limitations dispute, noting that the parties had raised "preliminary questions of fact that should be decided by the court." The court stated that at this hearing, "[t]he burden [would] be on . . . [Timothy] to establish that he was incompetent as contemplated by AS []09.10.140(a) . . . during the relevant period."

The superior court held the hearing on September 4, 2014. Two witnesses testified on Timothy's behalf: Sarah and Timothy's former psychiatrist. Sarah described her role in Timothy's life as an "advocate." She testified that she tried to help Timothy find work, complete high school, and obtain disability benefits and counseling and that she routinely transported him to appointments and court appearances. Timothy signed a medical release giving Sarah access to his medical records, and she sometimes sat in on his counseling sessions. She testified that without her help, Timothy would not make it to his court dates or appointments: "He misses court dates[;] he can't remember them[;] . . . he doesn't have the ability to keep track of [his appointments]."

Timothy's former psychiatrist testified as an expert in psychiatry; he treated Timothy from approximately 2007 to 2013. According to the psychiatrist, "[Timothy] was diagnosed with [p]ost[-][t]raumatic [s]tress [d]isorder and his case was a very complicated case dealing with sexual abuse and sexual trauma. [Timothy] . . . also had depression and anxiety . . . [and] [b]i-polar disorder." The psychiatrist also verified the accuracy of a letter he wrote in 2012 to support Timothy's claim for disability benefits in which he stated: "[T]he trauma that he has suffered is one of the most egregious cases

I have ever had to manage." The psychiatrist specifically testified that he did not believe Timothy was capable of understanding his legal rights or advocating for himself without assistance.

OCS called Timothy as a witness. He stated that in 2010, when he testified before a grand jury about his stepfather's abuse, he understood that what his stepfather had done was wrong. Timothy testified that after the grand jury proceedings he "just kind of wanted to walk away from it," but Sarah encouraged him to file this lawsuit. He acknowledged that, although he had appeared in court several times before to face criminal charges and to obtain a divorce, he had never claimed to be incompetent and had expressly stated that he understood his legal rights. And he testified that he felt comfortable asking clarifying questions to the judge during those proceedings if he did not understand a particular point.

On cross-examination, Timothy testified that Sarah helped him with most of his criminal cases and that although he represented himself in his divorce, Sarah helped him understand and fill out the paperwork. He also testified that he frequently missed court dates when he was not living with Sarah, for a variety of reasons. Timothy stated: "[A]ll my other rides fall through, people don't pick me up, I miss the bus[,] . . . I forget times . . . or my phone will die and I won't . . . make it in time." Finally, he testified that although he is "reluctant to tell society and average people [about his mental disability], . . . [he is] not afraid to . . . tell [courts, doctors, and professional people] about [his] issues," and he is "not afraid to ask . . . for help when needed."

On September 12, 2014, the superior court issued an order granting OCS's motion to dismiss, finding that Timothy's mental condition did not toll the statute of limitations. The court noted that the standard for mental incompetency is "whether a person could know or understand his legal rights sufficiently well to manage his personal affairs," and the court found that Timothy had not met his burden to show his

incompetency during the period following his eighteenth birthday. The court found it telling that during Timothy's prior interactions with the legal system, both as a plaintiff and as a defendant, "[h]e repeatedly asserted his competence to courts . . . and represented himself." While the court was careful not to "minimize the trauma . . . [Timothy] endured or his diagnosis of bi-polar and post-traumatic stress disorder," it found that he had not shown that he could not understand his legal rights during the relevant period, and accordingly granted OCS's motion to dismiss.

Timothy now appeals, arguing that the superior court should instead have applied the summary judgment standard at the hearing and denied the motion.

## III. STANDARD OF REVIEW

"When the superior court holds an evidentiary hearing to resolve factual disputes about when a statute of limitations began to run, we review the resulting findings of fact for clear error."[7] Clear error is present "if, after reviewing the entire record in the light most favorable to the party prevailing below, we are left with a definite and firm conviction a mistake has been made."[8]

## IV. DISCUSSION

### A. The Superior Court Applied The Correct Burden of Proof.

Timothy's primary argument on appeal is that the superior court applied the wrong legal standard when granting OCS's motion to dismiss. He interprets the court's

---

[7] *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 396 (Alaska 2014) (citing *Williams v. Williams*, 129 P.3d 428, 431 (Alaska 2006)).

[8] *Id.* (citing *John's Heating Serv. v. Lamb*, 129 P.3d 919, 922 (Alaska 2006)).

order as a grant of summary judgment and argues that the court should therefore have denied OCS's motion if there was "more than a scintilla of . . . evidence" supporting his claim of mental incompetency.[9]

In *Cikan v. ARCO Alaska, Inc.* we held that if material questions of fact exist as to a statute of limitations issue, summary judgment is improper and the superior court should instead consider the statute of limitations defense at a pre-trial hearing.[10] Timothy incorrectly assumes that the standard to be applied at that hearing is the summary judgment standard. The hearing is only required if the court has already determined, as it did here, that summary judgment is improper; our prior cases make clear that the purpose of the hearing is to *resolve* the factual issues, not simply to flag their existence.[11]

The superior court precisely followed the procedure set out in *Cikan*: After determining that summary judgment was improper because Timothy had raised a factual

---

[9]    *See* Alaska R. Civ. P. 56(c) (stating that summary judgment should be granted if "there is no genuine issue as to any material fact and . . . any party is entitled to a judgment as a matter of law"); *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 607 (Alaska 2011) ("Any evidence sufficient to raise a genuine issue of material fact, so long as it amounts to more than a scintilla of contrary evidence, is sufficient to oppose summary judgment." (quoting *Beal v. McGuire*, 216 P.3d 1154, 1161 (Alaska 2009))).

[10]    125 P.3d 335, 342 (Alaska 2005). We have approved of this procedure in several other cases, both before and after *Cikan*. *See, e.g.*, *Richardson v. Municipality of Anchorage*, 360 P.3d 79, 91 (Alaska 2015); *Catholic Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 725 (Alaska 2006); *Williams*, 129 P.3d at 431; *Lamb*, 46 P.3d at 1033; *Pedersen v. Zielski*, 822 P.2d 903, 907 n.4 & 908 (Alaska 1991).

[11]    *See Catholic Bishop*, 141 P.3d at 725 ("If a genuine issue of material fact [about the statute of limiations] is presented it should be resolved in advance of trial . . . following an appropriate evidentiary hearing."); *Cikan*, 125 P.3d at 342 ("[A] factual dispute over mental incompetency [should] be resolved . . . by the court after conducting an evidentiary hearing.").

issue as to his competency during the relevant period, the court held an evidentiary hearing to weigh the evidence and resolve the factual issue prior to trial.[12] A party claiming that the limitation period was tolled due to a disability has the burden of proving that disability by a preponderance of the evidence.[13] Accordingly, for Timothy's claim to survive, he needed to show by a preponderance of the evidence that he was mentally incompetent during the relevant period. The court weighed the evidence presented by the parties, as it was permitted to do, and determined that Timothy had not shown that he was incompetent during the relevant period.[14]

---

[12] Timothy argues in his reply brief that by making this factual determination itself, the court impermissibly deprived him of the right to have that issue decided by a jury. But "the task of interpreting and applying a statute of limitations traditionally falls within the province of the courts." *Cikan*, 125 P.3d at 339. And we have already expressly held that "to the extent the superior court does not address the substantive merits of a case, the use of evidentiary hearings to decide statutes-of-limitations issues is constitutional." *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1279 (Alaska 2013).

[13] *Adkins v. Nabors Alaska Drilling, Inc.*, 609 P.2d 15, 22 (Alaska 1980) (when it is undisputed that the limitations period has run, a party asserting incompetency has the burden of proof on that issue); *Fernandes v. Portwine*, 56 P.3d 1, 5 (Alaska 2002) (the general civil standard of proof is "a preponderance of the evidence").

[14] The superior court assumed that if Timothy was incompetent by reason of mental disability when he turned 18, the statutory period would have remained tolled. We have not directly addressed whether this approach is correct or whether he must have been incompetent when his cause of action accrued for that disability to toll the statute of limitations. *Cf. Cikan*, 125 P.3d at 341 n.18. We need not consider the issue now. Because we affirm the superior court's finding that Timothy was not incompetent after his eighteenth birthday, the statutory period has expired regardless of whether he was incompetent when his cause of action accrued.

We find that the superior court followed the correct procedure for resolving factual disputes over statute of limitations issues, as set out in *Cikan*, and applied the proper burden of proof to the evidence presented at the hearing.

**B.      Timothy's Remaining Arguments Are Waived.**

Timothy also argues that the superior court erred in finding that he was competent. He argues that the court applied the wrong test and that the court's factual finding was erroneous. Both of these arguments appear only in his reply brief and are therefore waived.[15] But even if the arguments had been properly raised, they would be unavailing because they have no merit.

**1.      *Adkins* provides the correct test for mental competency.**

The superior court used the test set out by this court in *Adkins v. Nabors Alaska Drilling, Inc.* to determine mental competency.[16] Under the *Adkins* test, "[t]he general test [of mental competency] is whether a person could know or understand his legal rights sufficiently well to manage his personal affairs."[17]

Timothy argues that the superior court should also have asked whether, even if he could understand his legal rights, he "nevertheless failed to act upon those rights because of [his] mental disability." He cites to two cases in which he claims this court adopted his preferred test. In *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, we characterized the issue as whether the individual claiming mental incompetency "was sufficiently competent to run his own legal affairs during the period in question."[18] And

---

[15]      *Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010) ("[W]e deem waived any arguments raised for the first time in a reply brief . . . .").

[16]      609 P.2d 15 (Alaska 1980).

[17]      *Id.* at 23.

[18]      713 P.2d 1197, 1203 (Alaska 1986).

in *Hernandez-Robaina v. State*, we cited with approval the *Black's Law Dictionary* definition of "mental incompetency," which defined the term as "incapable of understanding and acting with discretion in the ordinary affairs of life."[19]

However, both *Hikita* and *Hernandez-Robaina* reaffirm that *Adkins* provides the appropriate test. In *Hikita*, we began our discussion of Hikita's mental competency by citing to the *Adkins* test.[20] It is clear from the context that the language upon which Timothy relies was simply a paraphrase of the *Adkins* test and did not announce a separate test.[21] Similarly, in *Hernandez-Robaina*, the discussion of Hernandez's mental incompetency centered on the application of the *Adkins* test.[22] The supposedly different test quoted by Timothy was immediately followed in the opinion by our conclusion: "For these reasons, we reaffirm our commitment to the *Adkins* test as interpreted in this opinion."[23]

Here, we likewise reaffirm our commitment to the *Adkins* test. Timothy presents no authority that would justify a departure from this established test.

### 2. The superior court's factual finding of competence was not clearly erroneous.

Timothy also argues that the superior court "abused its discretion by finding

---

[19] 849 P.2d 783, 785 (Alaska 1993) (emphasis omitted) (quoting *Mental Incompetence; Mental Incompetency*, BLACK'S LAW DICTIONARY (6th ed. 1990)).

[20] *Hikita*, 713 P.2d at 1202 n.13.

[21] *See id.* at 1202-03.

[22] *Hernandez-Robaina*, 849 P.2d at 784-85.

[23] *Id.* at 785. In *Hernandez-Robaina*, this court interpreted the *Adkins* test as asking not whether a party actually did understand his or her rights, but whether a party *could* "comprehend the concepts and ideas of which his or her rights consist if those matters were adequately communicated." *Id.*

that '[Timothy] ha[d] not shown he was unable to understand his legal rights following the removal of his disability of minority.' " But there was considerable evidence presented at the hearing to support that finding. Timothy consistently acknowledged that he understood his legal rights in previous court proceedings, and he testified that he was telling the truth when he did so. He testified that he had discussed filing a lawsuit with Sarah as early as 2008, when they first met. He confirmed that he had successfully represented himself in his divorce litigation, and he specifically testified that he understood that if his ex-wife's child had been born while they were still married, he could be liable for child support, even though the child was not his. Although he also testified that he relied heavily on Sarah's help in his divorce and in his other legal proceedings, requiring assistance to pursue one's legal rights does not necessarily mean that one is incapable of understanding them.

Timothy himself acknowledged in his brief that "an inference may be drawn that [his] pro se divorce litigation demonstrated an understanding of matters legal." Although he went on to argue that this evidence "falls short of conclusively proving that [he] met the *Adkins* test for competency," OCS did not have to conclusively prove anything; rather, Timothy had the burden to prove his own incompetency.[24] We see no clear error in the superior court's conclusion that Timothy was capable of understanding his rights and was thus not mentally incompetent under the *Adkins* test.

## V. CONCLUSION

We AFFIRM the superior court's order dismissing Timothy's claims against OCS.

---

[24] *See Adkins v. Nabors Alaska Drilling, Inc.*, 609 P.2d 15, 22 (Alaska 1980).