*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| THOMAS TAFFE and DEVONY LEHNER, | ) ) ) | Supreme Court No. S-16854 |
| Appellants, | ) ) | Superior Court No. 3HO-13-00213 CI |
| v. | ) ) | O P I N I O N |
| FIRST NATIONAL BANK OF ALASKA, | ) ) ) | No. 7411 – September 27, 2019 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Anna Moran, Judge.

Appearances: Thomas Taffe and Devony Lehner, pro se, Homer, Appellants. Bruce A. Moore and Andrew B. Erickson, Landye Bennett Blumstein LLP, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.

## I.   INTRODUCTION

Borrowers brought suit alleging that their lending bank had engaged in fraudulent real estate lending practices. The bank responded that statutes of limitations barred the borrowers' fraud claims. Following an evidentiary hearing to establish

relevant dates for the statutes of limitations inquiry, the superior court entered judgment and awarded attorney's fees in the bank's favor. The borrowers appeal, arguing that the superior court erred in its factual and legal determinations and otherwise violated their due process rights. Seeing no error or due process violation in the superior court's rulings, we affirm its decisions.

## II.    FACTS AND PROCEEDINGS

Thomas Taffe and Devony Lehner borrowed money from First National Bank of Alaska to develop a Homer planned community subdivision, with some tracts reserved for conservation and outdoor activities.[1] This 2006 loan was secured by a deed of trust covering the entire property. Taffe and Lehner first subdivided the land into a group of lots with a single remainder tract. Once they recorded the subdivision plat, First National recorded a new deed of trust covering only the subdivided lots, releasing its security interest in the remainder tract.

In 2008 Taffe and Lehner obtained a second loan from First National, using it to retire the first loan and develop additional lots. They recorded a second plat subdividing the remainder tract into additional lots and several new tracts. First National recorded a deed of trust — signed by Taffe and Lehner — covering the entirety of the subdivision except lots already sold.

By early 2009 Taffe and Lehner became concerned, expecting First National to have released its security interest in the unsubdivided tracts as it had done in the first transaction. Late in 2009 Taffe and Lehner wanted to sell one tract to raise money for loan payments and other expenses. Taffe and Lehner had to negotiate the tract's release from First National's deed of trust security interest; First National's release terms included restrictions on Taffe and Lehner's use of the sale proceeds.

---

[1]    *See* AS 34.08.030 (providing for planned community declaration).

Taffe and Lehner struggled to meet the loan's repayment terms and requested an extension, ultimately executing a change in terms agreement with First National in February 2010; despite Taffe and Lehner's continued objection that First National's deed of trust was not intended to cover the unsubdivided tracts, the collateral expressly remained the same. Following an additional extension, in November 2012 First National sent a default notice stating its intent to foreclose on unsold subdivided lots and two unsubdivided tracts. An amended foreclosure notice in January 2013 stated that First National also intended to foreclose on the additional unsubdivided tracts still covered by the 2008 deed of trust. When Taffe and Lehner ultimately were unable to pay the loan, First National foreclosed and acquired the unsold land by offset bid at auction in April 2013.

Taffe and Lehner — self-represented — subsequently contested the foreclosure proceeding in superior court. They filed a complaint for declaratory relief in November 2013, primarily seeking to set aside the foreclosure sale and subsequent title transfers. In March 2014 they amended their complaint to add fraud claims, including that First National fraudulently induced them to take the second loan. Taffe and Lehner alleged that First National had promised to execute a new deed of trust secured by only the unsold subdivision lots after they recorded the second plat and to release the unsubdivided tracts as it had done when they recorded their first plat. Taffe and Lehner alleged that the second loan's terms violated their reasonable expectations and that the deed of trust was an ambiguous adhesion contract that should be interpreted in their favor. Taffe and Lehner again amended their complaint in December 2014, seeking additional declaratory relief and stating a variety of fraud claims.

Following motion practice and discovery, Taffe and Lehner suggested their fraud claim against First National was fraud in the execution,[2] rather than the fraud in the inducement alleged in their complaint. In July 2015, after Taffe and Lehner apparently abandoned their claim to set aside the foreclosure, the superior court dismissed Taffe and Lehner's requests for declaratory relief regarding the foreclosure and ruled that their remedies were limited to damages. In July 2016 the court granted First National summary judgment on most of Taffe and Lehner's remaining claims. The court denied summary judgment on the contractual ambiguity claim, ruling that there was a genuine dispute whether the deed of trust was fully integrated, and on the fraud claim that First National misrepresented the terms of the 2008 deed of trust.

First National subsequently sought to extinguish the remaining claims as barred by statutes of limitations. "[T]he ordinary operation of the statute of limitations looks to 'the date on which the plaintiff incurs injury.' "[3] But under Alaska's discovery rule, the statute of limitations does not begin to run until "a reasonable person has enough information to alert that person" to a potential cause of action or to "begin an inquiry to protect his or her rights."[4]

---

[2]    Fraud in the execution refers to executing a legal instrument, based on the fraudulent misrepresentation of another, wholly different from the instrument a person was led to believe was being executed. 17A C.J.S. *Contracts* § 202 (2019).

[3]    *Jarvill v. Porky's Equip., Inc.*, 189 P.3d 335, 338 (Alaska 2008) (quoting *Russell v. Municipality of Anchorage*, 743 P.2d 372, 375 (Alaska 1987)).

[4]    *Reasner v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 394 P.3d 610, 614 (Alaska 2017) (quoting *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988)).

Applying the discovery rule to the two-year statute of limitations for tort claims,[5] First National argued that Taffe and Lehner should have been prompted to inquire whether it intended to fulfill its alleged promise as early as August 2008, when First National did not execute a new deed of trust after the second plat was recorded; probably no later than February 2010, when they executed a change in terms agreement that did not alter the collateral; and certainly by October 2011, when they sent First National a memorandum apparently contending that it should release its liens to allow them to sell unsubdivided tracts. Because more than two years elapsed between these occurrences and Taffe and Lehner's November 2013 complaint, First National contended that the statute of limitations barred the fraud in the inducement claim.

Applying the discovery rule to the three-year statute of limitations for contract claims,[6] First National argued that Taffe and Lehner should have been prompted to inquire about the terms of the 2008 deed of trust by late 2009, when they disputed the need for a release from First National to sell a tract, and no later than February 2010, when they executed a change in terms agreement that did not alter the collateral. Because more than three years elapsed between either occurrence and Taffe and Lehner's November 2013 complaint, First National contended that the statute of limitations barred their fraud in the factum claim.

Taffe and Lehner opposed, arguing that no injury occurred until November 2012, when First National sent its foreclosure notice, and that they therefore brought their claims within the statutes of limitations. Taffe and Lehner disputed several of First National's assertions, but they presented no supporting evidence.

---

[5]     AS 09.10.070(a).

[6]     AS 09.10.053.

Following an evidentiary hearing, the superior court ruled in First National's favor on its statutes of limitations defenses. The court found that Taffe and Lehner knew enough to pursue a claim in 2009, when they questioned the need for a release from First National, and no later than February 2010, when they executed the first change in terms agreement with First National with no change in collateral. The court specifically found that by early 2009, Taffe and Lehner should have realized that First National "had a different view" of the agreement; they had questioned First National why a new deed of trust had not been issued. The court discounted as unreasonable Taffe and Lehner's arguments that they had no reason to believe First National did not intend to reduce its collateral. The court found that Taffe and Lehner "had all the information they needed to move forward with the [fraud] claim . . . [by] February [] 2010," and concluded that their fraud claim was barred by both the two-year statute of limitation on torts and the three-year statute of limitations on contracts.

The superior court entered final judgment in First National's favor and awarded it attorney's fees and costs of roughly $54,000 under Alaska Civil Rules 82 and 79.[7]

Taffe and Lehner appeal, arguing that the superior court erred in both its substantive decisions and its attorney's fees award in First National's favor.

---

[7] Alaska R. Civ. P. 82 (providing that "the prevailing party in a civil case shall be awarded attorney's fees"); Alaska R. Civ. P. 79 (providing that "the prevailing party is entitled to recover costs . . . necessarily incurred in the action").

## III.  DISCUSSION

### A.    The Superior Court Did Not Err Or Violate Due Process Rights By Conducting A Pretrial Evidentiary Hearing.[8]

Taffe and Lehner argue that the superior court legally erred by resolving at a pretrial evidentiary hearing the disputed facts about when the statute of limitations for their claims began to run.  But we have stated on numerous occasions that superior courts should hold pretrial evidentiary hearings to resolve whether a statute of limitations has run.[9]  The superior court therefore did not err by resolving these factual disputes at an evidentiary hearing.

Taffe and Lehner also contend that at the evidentiary hearing the superior court violated their constitutional due process rights by limiting the proceeding's length, assuming the role of fact finder, not determining incontrovertible facts, restricting the hearing to the statutes of limitations, and denying their right to a jury trial.  But Taffe and Lehner offer no specific facts to suggest that the hearing's length violated their due process rights, and their other arguments stand in direct opposition to our case law.

---

[8]      Whether a trial court follows the correct legal framework is a question of law reviewed de novo.  *Bibi v. Elfrink*, 408 P.3d 809, 815 (Alaska 2017).  "We review constitutional questions de novo, adopting the most persuasive rule of law in light of precedent, reason, and policy."  *State v. Planned Parenthood of Alaska*, 171 P.3d 577, 581 (Alaska 2007).

[9]      *See, e.g.*, *Reasner*, 394 P.3d at 614; *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1278 (Alaska 2013); *Catholic Bishop of N. Alaska v. Does 1-6*, 141 P.3d 719, 725 (Alaska 2006); *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005); *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1033 (2002); *Pedersen v. Zielski*, 822 P.2d 903, 907 n.4 (Alaska 1991).

The purpose of a pretrial evidentiary hearing on a statute of limitations question is to resolve factual disputes about when a statute of limitations began to run.[10] An evidentiary hearing occurs before trial, and the superior court must act as the fact finder.[11] Although considering a claim's substantive merits sometimes may be necessary, the court generally should limit its determination to the facts underlying a statute of limitations defense and not reach other issues.[12] And as long as the hearing reaches only the statute of limitations, the constitutional right to a jury trial is not violated.[13]

We therefore reject Taffe and Lehner's claims of legal error and due process violations.

---

[10]     *Cikan*, 125 P.3d at 342 ("[D]isputes concerning the statute of limitations raise preliminary questions of fact that should ordinarily be decided by the court after conducting an evidentiary hearing.").

[11]     *Id.* at 339 ("[T]he task of interpreting and applying a statute of limitations traditionally falls within the province of the courts."); *see also John's Heating Serv.*, 46 P.3d at 1033 n.28 (remanding for statute of limitations decision and noting "[t]he judge becomes the factfinder for purposes of determining the applicability of the statute of limitations" (quoting *Decker v. Fink*, 422 A.2d 389, 394 (Md. 1980))).

[12]     *See Williams v. Williams*, 129 P.3d 428, 431 (Alaska 2006) ("[W]e also recognize that addressing the substantive merits of a case in such a preliminary hearing can create considerable tension with the procedural rights to which parties are entitled, including the right to a jury trial.").

[13]     *Gefre*, 306 P.3d at 1279 ("But to the extent the superior court does not address the substantive merits of a case, the use of evidentiary hearings to decide statutes-of-limitations issues is constitutional [regarding right to a jury trial].").

**B.**    **The Superior Court Did Not Err When Applying The Statutes Of Limitations.**[14]

Taffe and Lehner challenge the superior court's application of the discovery rule on several grounds. They argue that they did not suffer an injury from First National's fraud until they were threatened with foreclosure in November 2012,[15] that the superior court did not determine the date their injury occurred, and that they made reasonable but unproductive inquiries tolling the statutes of limitations until they received actual notice in November 2012. These arguments lack merit.

**1.    Injury**

As First National notes, Taffe and Lehner's claims proceed from their contention that First National made misrepresentations when they signed the 2008 deed of trust. But that raises the question of when Taffe and Lehner were injured by the alleged misrepresentations. Our recent *Brooks Range Petroleum Corp. v. Shearer* decision is instructive.[16]

---

[14]    "When the superior court holds an evidentiary hearing to resolve factual disputes about when a statute of limitations began to run, we review the resulting findings of fact for clear error." *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 396 (Alaska 2014). "[W]e review de novo the legal standard used to determine accrual dates, and we review de novo questions regarding the applicable statute of limitations, the interpretation of that statute, and whether that statute bars a claim." *Gefre*, 306 P.3d at 1271 (footnotes omitted).

[15]    *See Jarvill v. Porky's Equip., Inc.*, 189 P.3d 335, 338 (Alaska 2008) ("[T]he ordinary operation of the statute of limitations looks to 'the date on which the plaintiff incurs injury.' " (quoting *Russell v. Municipality of Anchorage*, 743 P.2d 372, 375 (Alaska 1987))).

[16]    425 P.3d 65 (Alaska 2018).

*Brooks* involved a venue dispute in a lawsuit for breach of an employment contract, in part with respect to claims of negligent and intentional misrepresentation.[17] The critical issue was determining when the employee suffered actual harm, i.e., when the tort was complete,[18] which we said "also arises in the context of statutes of limitations."[19] We then discussed two previous statutes of limitations decisions concluding that a tort is complete when the plaintiff has "an appreciable injury" arising from the tortious conduct[20] and that the statute of limitations cannot begin to run until the plaintiff suffers injury or harm.[21] On the facts of *Brooks*, we concluded that the employee's misrepresentation claim — that his employment agreement was represented to be for at least ten years, but his employment was terminated after two and a half years — did not become complete until the employee's termination, when the employee actually suffered a pecuniary loss.[22] We stated that until the employment termination, the employee had suffered no loss despite the alleged misrepresentation two and a half years earlier.[23]

The fundamental questions in this case, then, are (1) when did Taffe and Lehner suffer an appreciable injury from First National's alleged 2008 misrepresentation

---

[17]    *Id.* at 68, 72.

[18]    *Id.* at 72-73.

[19]    *Id.* at 73.

[20]    *Id.* (discussing and quoting *Jones v. Westbrook*, 379 P.3d 963, 967-69 (Alaska 2016)).

[21]    *Id.* (discussing *Austin v. Fulton Ins. Co.*, 444 P.2d 536, 539-40 (Alaska 1968)).

[22]    *Id.*

[23]    *Id.*

and (2) when did they have inquiry notice, i.e., when should they reasonably have discovered, the appreciable injury sufficient to start the statutes of limitations? Although the superior court's ruling was focused on the discovery and inquiry notice question, in this case the appreciable injury and the discovery date are essentially the same.

The superior court found that in early 2009 Taffe and Lehner were aware of and complaining to First National that the unsubdivided tracts had not been released from the 2008 deed of trust. The failure to release the tracts meant that Taffe and Lehner's title to the tracts was clouded, arguably an appreciable injury in and of itself. But the injury became more appreciable later in 2009, when, as the superior court found, Taffe and Lehner wanted to sell a tract and had to negotiate with First National for a release of that tract from the deed of trust to effectuate the sale. As part of that negotiation, Taffe and Lehner contended that the deed of trust was not supposed to cover the tract, and First National responded: "[R]ead your Deed of Trust." First National released the tract for sale after reaching an agreement with Taffe and Lehner on the disposition of the sale proceeds, but it refused to release any other tracts from the deed of trust. This meant that Taffe and Lehner's title to the tracts remained clouded. Finally, as the court found, in February 2010 Taffe and Lehner were forced, under protest, to negotiate a loan extension and change of terms agreement including leaving the unsubdivided tracts covered by the deed of trust. The February 2010 agreement meant that Taffe and Lehner's title to the unsubdivided tracts remained clouded and they would be forced to negotiate any future tract sales with First National. This is an appreciable injury.

Because Taffe and Lehner's misrepresentation claim was complete no later than February 2010 and by that same time Taffe and Lehner had notice of their alleged injury — tracts that they contended were represented in 2008 to have clear title had clouded title, and there were related restrictions on sale proceeds — the superior court

correctly concluded that the applicable statutes of limitations for Taffe and Lehner's fraud claims began to run no later than February 2010.

### 2. Exact date of injury

Taffe and Lehner assert that the superior court erred by not determining the exact date their injury occurred. But it was unnecessary to establish an exact date because the court found that Taffe and Lehner "had all the information they needed to move forward with the claim from December 21, 2009 [when First National released a tract] through February 2, 2010 [when the first change in terms agreement was entered]." Taffe and Lehner point to no evidence that this finding was clearly erroneous, and there was no reason for more specificity in light of the timing.

### 3. Inquiry

Taffe and Lehner contend that the superior court, despite determining when a reasonable person should have begun inquiring into the alleged fraud, never determined whether they made such inquiries. But the court found that they started inquiring in early 2009 whether First National intended to execute a new deed of trust, when they questioned why it had not been done.

### 4. Equitable tolling

Taffe and Lehner argue in the alternative that the superior court applied the wrong standard when determining whether their inquiries were reasonable. They cite cases discussing the doctrine of equitable estoppel tolling the statute of limitations.[24]

---

[24] "[T]o establish equitable estoppel, 'a plaintiff must produce evidence of fraudulent conduct upon which it reasonably relied when forbearing from the suit.' " *Waage v. Cutter Biological Div. of Miles Labs., Inc.*, 926 P.2d 1145, 1149 (Alaska 1996) (quoting *Pedersen v. Zielski*, 822 P.2d 903, 908-09 (Alaska 1991)). "[A] party should be charged with knowledge of the fraudulent misrepresentation or concealment only when it would be utterly unreasonable for the party not to be aware of the deception."
(continued...)

First National responds that Taffe and Lehner failed to present any evidence that it misrepresented or concealed the fraud claim's existence and that its responses to their inquiries clearly indicated it did not intend to execute a new deed of trust.

Equitable estoppel does not apply if there is no misrepresentation or concealment regarding a claim's existence. Taffe and Lehner point to no evidence of concealment, and the superior court's finding regarding their discovery of the alleged fraud by February 2010, at the latest, contradicts their assertion of further concealment.

### C. The Superior Court Did Not Abuse Its Discretion By Not Ruling On Taffe And Lehner's Declaratory Judgment Request.[25]

Taffe and Lehner contend that the superior court erred by not granting their petition for declaratory judgment and request for expedited consideration. First National counters that Taffe and Lehner essentially waived the issues by incorporating the petition into an amended complaint and by not showing why expedited consideration was needed and that the issues have since been mooted.

Under Alaska's Declaratory Judgment Act, in "an actual controversy in the state, the superior court . . . *may declare* the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought."[26] There was no requirement that the court make a declaratory judgment ruling.

---

[24]     (...continued)
*Id.* (quoting *Palmer v. Borg-Warner Corp.*, 838 P.2d 1243, 1251 (Alaska 1992)).

[25]     "We review a trial court's denial of . . . declaratory relief for abuse of discretion . . . ." *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 322 (Alaska 2006).

[26]     AS 22.10.020(g) (emphasis added); *see also Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 358 (Alaska 2001) ("The language of the [Declaratory Judgment Act] makes it explicit that whether to issue a declaration is a discretionary decision committed to the superior court.").

"[D]eclaratory relief is generally used to settle a controversy that has yet to 'ripen into violations of law,' or 'to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued.' "[27] "[D]eclaratory judgments are rendered to clarify and settle legal relations, and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' A court should decline to render declaratory relief when neither of these results can be accomplished."[28]

Taffe and Lehner petitioned for declaratory judgment at the same time they were litigating their fraud and contract claims. The issues raised in their petition overlapped with — and in some part were identical to — the fraud and contract claims stated in their complaint. The superior court ultimately dismissed the fraud and contract claims, and we are affirming that dismissal. Taffe and Lehner have made no showing that, absent a viable fraud or contract claim, their claims for declaratory relief raised different issues that could be addressed. We therefore reject their argument; we cannot conclude that the superior court abused its discretion, and there is no need to reach the question whether expedited consideration should have been granted.

### D. The Superior Court Did Not Abuse Its Discretion By Awarding Attorney's Fees To First National.[29]

Taffe and Lehner assert that the superior court erred by awarding attorney's fees to First National, based on arguments about the length of its various filings and

---

[27]     *Lowell v. Hayes*, 117 P.3d 745, 755-56 (Alaska 2005) (quoting CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC.: CIV. § 2751 (3d ed. 1998)).

[28]     *Id.* at 755 (quoting *Jefferson v. Asplund*, 458 P.2d 995, 997-98 (Alaska 1969)).

[29]     We review the amount of an attorney's fees award for abuse of discretion. *Williams v. GEICO Cas. Co.*, 301 P.3d 1220, 1225 (Alaska 2013).

unspecified errors it made during litigation.  First National sought final judgment and attorney's fees of roughly $54,000, equal to 20% of its "reasonable and necessary attorney's fees," under Alaska Civil Rule 82(b)(2), and the court granted First National's motion.  Because Taffe and Lehner point to no evidence whatsoever demonstrating that the superior court abused its discretion by following Rule 82, we affirm the attorney's fees award.

## IV.   CONCLUSION

The superior court's decision is AFFIRMED.